# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-1068

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Eastern District of Missouri. |
| Dominique M. Betts, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: October 17, 2007
Filed: December 4, 2007

_____

Before RILEY, MELLOY, and COLLOTON, Circuit Judges.

_____

RILEY, Circuit Judge.

Dominique Betts (Betts) pled guilty to being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). The district court[1] sentenced Betts to 120 months' imprisonment, to run consecutive to Betts's state sentences. Betts appeals. We affirm.

---

[1]The Honorable Rodney W. Sippel, United States District Judge for the Eastern District of Missouri.

## I.    BACKGROUND

On November 20, 2005, Betts was a patron at The Next Level Club (Club), an after-hours club in New Madrid, Missouri. Inside the Club, Kafern Williams (Williams) hit Betts on the chin, rendering Betts unconscious and opening a cut that later required eighteen stitches to close. Other patrons carried Betts out of the Club. After regaining consciousness outside of the Club, Betts observed Williams with a firearm. Betts then left the premises of the Club to go to an area behind a nearby house to retrieve a firearm. After retrieving the firearm, Betts twice discharged the firearm in the air behind the house. Betts discharged the firearm in an attempt to ward off an alleged attack by Williams and an associate of Williams, who also had a firearm. Betts related:

> I started shootin' the gun up in the air. Just to let [Williams] know, . . . you ain't the only one got a gun. . . . [A]fter I shot twice in the air, they saw me where I was cause they saw the fire jumpin' from the gun. . . .

Betts pled guilty to being a felon in possession of a firearm. The United States Probation Office prepared a presentence investigation report (PSR)[2] setting Betts's base offense level at twenty-four. The PSR applied a four level enhancement pursuant to United States Sentencing Guidelines § 2K2.1(b)(5) for using a firearm in connection with another felony offense, and credited Betts with three levels for acceptance of responsibility. The PSR concluded Betts's total offense level was twenty-five and Betts had a criminal history category VI, based upon (1) Betts' numerous convictions (assault; common assault; possession of marijuana; non-support

---

[2]At sentencing, Betts objected to the application of an enhancement pursuant to Guidelines § 2K2.1(b)(5). Betts never objected to the PSR's factual statements. We rely on and accept as true the unobjected to facts in the PSR. See Fed. R. Crim. P. 32(i)(3)(A); United States v. Wintermute, 443 F.3d 993, 1005 (8th Cir. 2006).

All citations to the United States Sentencing Guidelines are to the 2005 edition. See generally United States v. Carter, 490 F.3d 641, 643 (8th Cir. 2007).

of child; distribution, delivery, and manufacturing of a controlled substance; second-degree assault; petty larceny; and possession of marijuana, as well as seven other unscored convictions), (2) Betts being on probation at the time of the offense, and (3) Betts committing the offense within two years of release from custody. Because the statutory maximum term of imprisonment was 120 months' imprisonment, Betts's advisory Guidelines sentencing range was 110 to 120 months' imprisonment.

The district court adopted the PSR's computation of Betts's advisory Guidelines sentence, declined to depart downward based upon Betts's criminal history category over-representing either the seriousness of Betts's criminal history or the likelihood Betts will commit other crimes, and sentenced Betts to 120 months' imprisonment. The district court ordered Betts's federal sentence to run consecutive to Betts's state sentences based upon "the serious nature of the instant offense" and "in consideration of [Betts's] history." In concluding Betts's sentence was tailored to the 18 U.S.C. § 3553(a) factors, the district court stated:

> In determining the particular sentence to be imposed, the Court shall consider first the nature and circumstances of the offense and the history and characteristics of the defendant. Interjecting a firearm, even if it didn't actually go back into the club, into a social scene in response to physical injury, 15 convictions in the span of 26 months, a sentence as a result of those factors is to reflect the seriousness of the offense, to promote respect for the law, which is sorely lacking here, to provide just punishment, to afford deterrence, to protect the public, which is important here. They're all important, but protecting the public is a motivating factor in this instance.

This appeal followed.

## II.   DISCUSSION

On appeal, Betts argues (1) the district court erred in applying a four offense level enhancement based upon Betts's use of a firearm in connection with another felony offense, (2) the district court erred by declining to depart downward based upon Betts's over-represented criminal history, and (3) Betts's sentence is not reasonable under 18 U.S.C. § 3553(a).

### A.   Using a Firearm in Connection with Another Felony Offense

We review de novo the district court's application of the Guidelines, and we review for clear error the district court's factual findings. See United States v. Ingram, 501 F.3d 963, 968 (8th Cir. 2007).

Guidelines § 2K2.1(b)(5) increases a defendant's offense level four levels "[i]f the defendant used or possessed any firearm or ammunition in connection with another felony offense." In the absence of a conviction for another felony offense, the government must prove by a preponderance of the evidence all of the essential elements of the underlying felony offense, including the absence of any defenses. See United States v. Raglin, 500 F.3d 675, 677 (8th Cir. 2007). For Betts, we look to Missouri criminal law. Under Missouri law, the State of Missouri has the burden to prove beyond a reasonable doubt the defendant did not act in lawful self defense. See Missouri v. Beck, 167 S.W.3d 767, 780 (Mo. Ct. App. 2005). In the context of the advisory Sentencing Guidelines, the government has the burden to prove the absence of any defense by a preponderance of the evidence. See United States v. Pirani, 406 F.3d 543, 551 n.4 (8th Cir. 2005) (en banc).

The district court concluded Betts used the firearm in connection with the crime of unlawful use of a weapon, a Missouri class D felony punishable with up to four years' imprisonment. Mo. Rev. Stat. §§ 571.030.1(4), 571.030.7, 558.011.1(4) (2005). The crime of unlawful use of a weapon is knowingly exhibiting "in the

presence of one or more persons, any weapon readily capable of lethal use in an angry or threatening manner." Mo. Rev. Stat. § 571.030.1(4) (2005).

First, Betts contends the government failed to prove (1) Betts used the firearm "in an angry or threatening manner" and (2) Betts exhibited the firearm in the presence of others, because Betts discharged the firearm in a location some distance from other people. "Missouri courts have held that whether a weapon was exhibited in a 'threatening' manner is an objective determination," Ingram, 501 F.3d at 968, and a defendant exhibits a firearm in the presence of others, even though no one saw the firearm, "by giving evidence of [the firearm] through visible signs and actions," Missouri v. Johnson, 964 S.W.2d 465, 468 (Mo. Ct. App. 1998). Betts retrieved and discharged the firearm allegedly to ward off an attack by Williams and Williams's associate. Betts gave evidence of the firearm by firing it to threaten Williams and Williams's associate, who thereby learned Betts possessed a firearm. Betts stated, "they saw me where I was cause they saw the fire jumpin' from the gun." The government proved by a preponderance of the evidence Betts unlawfully used a weapon in violation of Missouri Revised Statutes section 571.030.1(4).

Second, Betts argues the government failed to prove Betts committed the crime because Betts acted in lawful self defense. Missouri Revised Statute section 563.031.2 (2005) permits the "use [of] deadly force upon another person" if, among other things, the defender "reasonably believes that such deadly force is necessary to protect himself [or herself] or another against death, serious physical injury," or other forcible felony.[3] Under Missouri law, to prove lawful self defense, the evidence must show:

---

[3]The requirements of Missouri Revised Statute section 563.031.1 (2005), in addition to § 563.031.2, apply because "a defendant charged under § 571.030.1(4) is only entitled to an instruction on self-defense if the facts justify the use of deadly force." Missouri v. Parkhurst, 845 S.W.2d 31, 36 (Mo. 1992) (en banc).

(1) an absence of aggression or provocation on the part of the defender;

(2) a real or apparently real necessity for the defender to kill in order to save himself from an immediate danger of serious bodily injury or death;

(3) a reasonable cause for the defendant's belief in such necessity; and

(4) an attempt by the defender to do all within his power consistent with his personal safety to avoid the danger and the need to take a life.

Missouri v. Thomas, 161 S.W.3d 377, 379 (Mo. 2005) (en banc).

"A self-defense instruction is not appropriate if the defendant renewed or continued the confrontation, because behavior of that sort is inconsistent with the requirement that defendant avoid the danger and the need to take a life." Id. "The 'renewal' cases are most often characterized by a renewal of the confrontation after either (1) the initial victim left the scene to obtain a weapon or (2) a significant break in the confrontation is made when the defendant removes himself or herself from the confrontation before coming back to renew the fight." Id. at 379-80 (punctuation altered and internal citations omitted). Here, Betts renewed the confrontation with Williams after the initial confrontation had ended and Betts left the Club to obtain a weapon. Betts attempts to distinguish this situation from the renewal cases by arguing Williams and Williams's associate were still threats to Betts when Betts discharged the firearm behind the house. Nothing in the record supports the allegation Williams or Williams's associate continued to threaten Betts when Betts discharged the firearm. The district court's factual finding that Betts was "removed from the problem, but [Betts] then reinsert[ed] himself" is not clearly erroneous. The district court did not err (1) in concluding Betts did not act in lawful self defense, (2) in holding Betts used a firearm in connection with the crime of unlawful use of a weapon, and (3) in applying a four level enhancement pursuant to Guidelines § 2K2.1(b)(5).

**B. Downward Departure Based Upon Betts's Over-Represented Criminal History**

Betts claims the district court erred in denying a motion for downward departure under Guidelines § 4A1.3(b)(1). "The discretionary denial of a motion for downward departure is unreviewable unless the court failed to recognize its authority to depart." United States v. Cubillos, 474 F.3d 1114, 1120 (8th Cir. 2007) (quotation omitted). The district court recognized its authority to depart from the advisory Sentencing Guidelines range; however, the district court declined to exercise its discretion due to Betts's extensive criminal history and likelihood of recidivism. The district court's decision not to depart downward is not reviewable.

**C. Reasonableness Review**

Conceding the district court properly applied the Sentencing Guidelines in running Betts's federal sentence consecutive to Betts's state sentences, Betts argues running the 120 months' imprisonment sentence consecutive to Betts's state sentences is not reasonable. Specifically, Betts contends the district court failed to consider (1) Betts acted in self defense and (2) Betts only had an undischarged term of imprisonment because Missouri revoked Betts's probation before the imposition of the federal sentence. We need not consider further Betts's first contention because Betts did not act in lawful self defense.

We review for reasonableness a district court's decision to impose a concurrent, partially concurrent, or consecutive sentence. See United States v. Winston, 456 F.3d 861, 867 (8th Cir. 2006). Because the district court imposed a sentence within the advisory Sentencing Guidelines range, Betts's sentence is presumptively reasonable. See Rita v. United States, ___ U.S. ___, ___, 127 S. Ct. 2456, 2462 (2007); United States v. Solis-Bermudez, 501 F.3d 822, 884 (8th Cir. 2007).

Section 3584(a), (b) of Title 18, United States Code, mandates consideration of the § 3553(a) factors in determining whether to impose a concurrent, partially

concurrent, or consecutive sentence, and encourages consecutive sentences "[w]hen prison terms for multiple offenses are imposed at different times." United States v. Shafer, 438 F.3d 1225, 1227 (8th Cir. 2006). "The objective is 'to achieve a reasonable incremental punishment for the instant offense and avoid unwarranted disparity.'" Id. (quoting U.S.S.G. § 5G1.3, cmt. n.3(A)). Furthermore, although "the Guidelines are no longer mandatory, the Guidelines must be considered in fashioning a reasonable sentence under § 3553(a)." United States v. Feemster, 483 F.3d 583, 588 (8th Cir. 2007), petition for cert. filed, No. 07-6727 (Sept. 14, 2007). The Guidelines recommend "the sentence for the instant offense be imposed consecutively to the sentence imposed for the revocation." U.S.S.G. § 5G1.3, cmt. n.3(C). The district court gave effect to 18 U.S.C. §§ 3553(a), 3584(a) and Guideline § 5G1.3 by running Betts's federal sentence consecutive to Betts's state sentences. Betts's consecutive sentences are not unreasonable.

## III.  CONCLUSION

We affirm the judgment of the district court.

_____