NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0268n.06

Case No. 19-3966

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED
Jun 03, 2021
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| JOSHUA WALKER, | ) | COURT FOR THE NORTHERN |
| | ) | DISTRICT OF OHIO |
| Defendant-Appellant. | ) | |

Before:  BATCHELDER, GRIFFIN, and BUSH, Circuit Judges

JOHN K. BUSH, Circuit Judge.  Joshua Walker sat at the Westender Bar in Cleveland quietly sipping a drink one evening when, without warning or provocation, a man descended on him from behind and began to beat him mercilessly.  The attack continued for several seconds until it spilled out into the street, where Walker pulled out a gun and shot his assailant.  Walker, a convicted felon on supervised release, was not allowed to have a firearm.  So he was charged, and later convicted, as a felon in possession of ammunition, a crime for which the Sentencing Guidelines recommend a sentence between 41- and 51-months' imprisonment.  After a brief hearing, the district court enhanced Walker's sentence to 90 months based on a cross-reference to voluntary manslaughter.  Because that enhancement was based on insufficient factual findings, we vacate and remand for resentencing.

I.

A.    FACTUAL BACKGROUND

The bar's surveillance cameras captured most of the few-second altercation, which occurred on October 25, 2017.  Video shows Walker seated at the bar counter having a drink. Aaron Mason sits down on the other side of the bar, his gaze locked on Walker.  Mason dons fingerless gloves and anxiously fidgets in place.  He then approaches Walker from behind.  Walker turns, and Mason punches him squarely in the face.  Mason then lets fly a torrent of blows as Walker tries to fend Mason off with his left hand while seeming to reach with his right hand for a gun concealed in his waistband.  After grappling for a short time, the two men tumble into the street outside, and Mason attempts to pin Walker to the concrete.  With Mason on top of him, Walker draws his gun, wedges it between them, and fires.  Mason then collapses to the ground. Walker rises quickly to his feet, briefly points the gun at his now-supine attacker, and flees the scene, leaving behind his cell phone and three spent 9mm shell casings.  Mason later died from the gunshot wounds.  No firearm was ever recovered.

B.    STATE COURT PROCEEDINGS

Walker was arrested a year later and charged in state court with murder, felonious assault, voluntary manslaughter, and possession of a weapon under disability.  He was held in the Cuyahoga County Jail until state prosecutors dismissed the charges against him without prejudice in March 2019.  In a press release following the dismissal, the prosecutor's office explained that it had decided to drop the charges against Walker after reviewing the surveillance footage, which a spokesman said prosecutors had not reviewed prior to the grand jury indictment.  According to the spokesman, the state concluded from the footage that Walker was the victim of "an unprovoked physical attack."  Not coincidentally, Ohio's new self-defense law, which shifted the burden of proof

for self-defense in a homicide case from the defendant to the prosecution, took effect the same month that the state chose to drop its charges against Walker. *See* Ohio Rev. Code Ann. § 2901.05(B).

C. FEDERAL INDICTMENT AND TRIAL

Immediately upon dismissal of the state charges, federal prosecutors in Ohio indicted Walker for being a felon in possession of ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Before trial, Walker and the government agreed to four stipulations: (1) that Walker is the person depicted in the surveillance footage wearing a blue jacket and seated near the door; (2) that Walker is a convicted felon; (3) that the 9mm casings found at the crime scene "traveled in and affected interstate commerce"; and (4) that a forensic examiner determined that all three 9mm rounds were fired from the same weapon.

Walker's argument at trial was twofold. First, he argued that he did not possess the firearm at any point before Mason attacked him. Rather, according to Walker, it was Mason who entered the bar armed with the handgun; Walker merely swiped the gun from Mason during the brawl and fired it in self-defense. Second, Walker asserted a justification defense, arguing that his violation of the felon-in-possession statute was justified in the circumstances. The jury rejected both arguments and convicted Walker for the felon-in-possession charge.

D. SENTENCING

The presentence report set Walker's offense level at 29 based on a recommended cross-reference to the federal voluntary manslaughter statute (18 U.S.C. § 1112) under USSG § 2K2.1(c) and on the probation officer's conclusion that Walker did not qualify for an acceptance-of-responsibility reduction. Walker was in a criminal history category of III. Thus, according to the

PSR, the advisory sentencing range under the Guidelines was 108 to 120 months' imprisonment.[1]

Walker objected to all aspects of the PSR, including the manslaughter enhancement, the recommended denial of the acceptance of responsibility reduction, and the sentencing range.

At the sentencing hearing, the district court adopted the PSR's findings over Walker's objections. The court concluded that Walker was not entitled to a two-level reduction for acceptance of responsibility because he contested his factual guilt by asserting the affirmative defense of justification.

Walker objected to the voluntary manslaughter enhancement on the ground that he shot Mason in self-defense rather than in the heat of passion. The court overruled Walker's objection for two reasons. First, it concluded that the jury heard and rejected the self-defense argument when it convicted him despite a jury instruction on a justification defense. Second, the court opined that Walker's conduct in response to the unprovoked attack seemed "more akin to voluntary manslaughter" than to self-defense.

In response to Walker's objection to the cross-reference, the government urged, "It could have been murder based on the video we played at trial. The defendant shot Mr. Mason while running away from him. The threat had been neutralized." The government also expressed its "belie[f]" that Walker fired an additional shot "after Mr. Mason was on the ground," even as it acknowledged that the government "did not enter any evidence from any medical examiner" to support that belief and that no witness testified to "an additional shot" fired after "[t]he threat had been neutralized."

---

[1] The full Guidelines range for an offense level of 29 and criminal history category of III is 108 to 135 months' imprisonment. USSG § 5A. However, the maximum sentence under the felon-in-possession statute is 10 years. 18 U.S.C. § 924(a)(2). Therefore, the PSR limited the recommended sentencing range to 108 to 120 months' imprisonment.

Despite the acknowledged lack of evidence, the court accepted the government's account of the surveillance footage played at trial and made the following findings of fact based on its admittedly hazy recollection of the video:

> He was then assaulted by Mr. Mason, and the two of them tumbled out to the front of the bar. The Defendant then shot Mason, and as well as I can remember, I think there were three shots fired. And my recall is that at least one of them may—or there may have been testimony, one of them was when Mason was already down on the ground.
> . . . .
>
> As I best recall the evidence, you weren't responding solely to a fight brought on by the victim. You also could have walked away at least after he was shot once and was on the ground. Those are major factors to me recommending the 90-month sentence.

The district court sentenced Walker to 90 months in prison, which is below the Guidelines range for the offense level calculated in the PSR but above what the range would have been absent the manslaughter enhancement. The district court explained its sentencing decision by engaging in a detailed discussion of the § 3553(a) factors. The court also noted that it had conducted a poll of the jury to determine what the jurors who convicted Walker thought to be a just sentence for his felon-in-possession crime. On average, the jurors indicated that Walker should spend "about 50 months" in prison.

## II.

We review sentences based on the advisory Sentencing Guidelines for reasonableness under an abuse of discretion standard. *United States v. Booker*, 543 U.S. 220, 260–61 (2005). The reasonableness determination has both a procedural and a substantive component. *United States v. Jones*, 445 F.3d 865, 869 (6th Cir. 2006). For a sentence to be procedurally reasonable, "the court must properly calculate the guidelines range, treat that range as advisory, consider the sentencing factors in 18 U.S.C. § 3553(a), refrain from considering impermissible factors, select

the sentence based on facts that are not clearly erroneous, and adequately explain why it chose the sentence." *United States v. Rayyan*, 885 F.3d 436, 440 (6th Cir. 2018). A defendant's claim that a sentence is substantively unreasonable is a claim that the sentence is "too long." *Id.* at 442. The substantive reasonableness inquiry is concerned, not with whether the district court "failed to consider a factor or considered an inappropriate factor; that's the job of procedural unreasonableness"; rather, a sentence is substantively unreasonable if the district court "placed too much weight on some of the [§ 3553(a)] factors and too little on others." *Id.* at 442 (citing *Gall v. United States*, 552 U.S. 38, 51 (2007)). We review the procedural and substantive reasonableness of a sentence imposed by the district court for abuse of discretion, bearing in mind that factual findings will stand unless clearly erroneous and that legal conclusions will stand unless our review leads to a contrary conclusion. *United States v. Bolds*, 511 F.3d 568, 579 (6th Cir. 2007).

III.

Walker's sentence is procedurally unreasonable because the court made no factual findings disproving any element of Walker's self-defense argument.[2] "District courts may cross-reference under § 2K2.1 only where a preponderance of the evidence supports the conclusion that the defendant committed or attempted to commit the offense that provides the cross-reference." *United States v. Frost*, 521 Fed. App'x 484, 490 (6th Cir. 2013). Thus, to enhance a sentence based on a cross-reference to another offense, the court must find "by a preponderance of the

---

[2] Though the issue was not raised directly by the parties, we also question the procedural reasonableness of the district court's reliance on the federal manslaughter statute, 18 U.S.C. § 1112, as the basis for the cross-reference. For the cross-reference to be proper, the government must prove all elements of the cross-reference offense by a preponderance of the evidence. One element of the federal manslaughter statute is that the crime must have occurred "[w]ithin the special maritime and territorial jurisdiction of the United States." 18 U.S.C. § 1112(b). Mason was killed at a privately owned bar in Cleveland. Therefore, the requirements of § 1112(b) are not satisfied. The Guidelines permit the court to base the cross-reference on state and local offenses as well as violations of federal law. USSG § 2K2.1 n.14(c); *Betts*, 509 F.3d at 445 (cross-reference based on violation of a Missouri statute). On remand, the district court should consider whether it would be more appropriate to apply Ohio law or some other federal law when considering the cross-reference.

evidence all of the essential elements of the underlying offense, including the absence of any defenses." *United States v. Betts*, 509 F.3d 441, 445 (8th Cir. 2007); *see United States v. Hamilton*, 550 F. App'x 291, 292 (6th Cir. 2014).

The Ohio self-defense statute requires a showing that the defendant "(1) was not at fault in creating the situation giving rise to the affray; (2) had a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of such force; and (3) did not violate any duty to retreat or avoid the danger." *State v. Warren*, No. 29455, 2020 WL 7863471, at *3 (Ohio Ct. App. 2020) (citing *State v. Barnes*, 759 N.E.3d 1240, 1243 (Ohio 2002)). To overcome the defense, the prosecution must disprove at least one of those three elements. *Id.* At sentencing, "the government has the burden to prove the absence of any defense by a preponderance of the evidence." *Betts*, 509 F.3d at 445.

When Walker raised a self-defense objection to the manslaughter cross-reference at sentencing, the district court gave no consideration to any of the elements of that defense. Rather, the court simply noted that Walker raised a justification defense at trial, which the jury rejected, then summarily concluded that the facts were "more akin to voluntary manslaughter" than self-defense.

That approach was insufficient for two reasons. First, the justification defense at trial was a defense only to the felon-in-possession charge, not the manslaughter cross-reference. Justification and self-defense are different defenses with different elements and different burdens of proof. *Compare United States v. Kemp*, 546 F.3d 759, 765 (6th Cir. 2008) (outlining elements of a justification defense), *with Warren*, 2020 WL 7863471, at *3 (outlining elements of self-defense). The jury's determination that Walker was not justified in possessing ammunition has little bearing on whether he was defending himself when he shot Mason. Second, in summarily

concluding that the facts of this case are "more akin to voluntary manslaughter" than self-defense, the district court made no reference to the self-defense standard, nor did it make factual findings that were sufficiently stated to show that any element of that standard was unmet.[3] The court cannot just "summarily adopt the factual findings in the presentence report" over the defendant's objection or simply declare *ipse dixit* that the evidence supports those findings. *United States v. White*, 492 F.3d 380, 415 (6th Cir. 2007) (quotation omitted). "Rather, the district court must *actually find facts*, and it must do so by a preponderance of the evidence." *Id.* at 416. "[F]ailure to actually 'find' facts by a preponderance of the evidence on contested matters during sentencing is error." *United States v. Shannon*, 803 F.3d 778, 788 (6th Cir. 2015).[4] Because the district court failed to make actual findings of fact showing that all elements of the manslaughter cross-reference were satisfied, "including the absence of any defenses," *Betts*, 509 F.3d at 445, Walker's enhanced sentence is procedurally unreasonable.[5]

---

[3] The dissent suggests that Walker forfeited the self-defense argument because he did not argue at sentencing that the court was obliged to make detailed factual findings on the elements of self-defense. Dissent at 12. To preserve an objection for appeal, a defendant need only clearly articulate the objection and the grounds for making the objection. *See United States v. Bostic*, 371 F.3d 865, 872-73 (6th Cir. 2004). At sentencing, Walker clearly articulated his objection that the manslaughter cross-reference was inappropriate because he acted in self-defense, and he expressly grounded that objection on the video evidence. Walker did not forfeit the argument.

[4] Nothing in our decision would require the district court to conduct a "mini bench trial," as the dissent asserts that it would. Dissent at 14. We only require that sentencing courts engage in actual factfinding before applying an enhancement. *White*, 492 F.3d at 416. Where facts contributing to an enhancement are in dispute, district courts have often deemed it advisable to allow parties to call witnesses or to present video recordings and other evidence at the sentencing hearing. *See, e.g.*, *United States v. Bucio*, __ F. App'x __, 2021 WL 2030077, at *4 (6th Cir. May 21, 2021); *United States v. Bickerstaff*, __ F. App'x __, 2021 WL 1511258, at *2 (6th Cir. Apr. 16, 2021). This is certainly not necessary in all cases, and we take no position as to the advisability of such measures on remand. *But see United States v. McMeen*, 49 F.3d 225, 226 (6th Cir. 1995) ("If a 'contested sentencing enhancement factor appears in the probation report and is not proved by the government at the hearing, the court must insure that the factor is otherwise proved by reliable evidence before using it to increase the sentence.").

[5] We also note that the district court's recitation of the facts may be inconsistent with what the surveillance footage actually shows. At sentencing, the court itself expressed misgivings about its own recall of the evidence presented at trial three months earlier. Because the court's failure to make sufficient factual findings on self-defense is enough on its own to warrant vacatur, we need not determine whether any of the factual findings the court did make were clearly erroneous. However, on remand the district court should undertake a fresh review of the surveillance footage and other evidence presented at trial before it makes any further findings of fact.

IV.

Walker also raises a series of other challenges to his sentence. Because these challenges are independent of the discussion above, and would otherwise persist on remand, we decide them now.

First, he challenges the district court's denial of an acceptance of responsibility reduction. A defendant qualifies for a two-level reduction under the Guidelines if he "clearly demonstrates acceptance of responsibility for his offense," USSG § 3E1.1, by "truthfully admitting the conduct comprising the offense(s) of conviction, and truthfully admitting or not falsely denying any additional relevant conduct." *Id.* § 3E1.1 n.1. Though it is possible for a defendant to receive the reduction despite "exercis[ing] his constitutional right to a trial," such an outcome is "rare" and is only appropriate where the defendant's purpose in going to trial is "to assert and preserve issues that do not relate to factual guilt," such as a challenge to the constitutionality of a statute or the applicability of a statute to his conduct. *Id.* § 3E1.1 n.2. Walker contested his factual guilt by insisting that he did not possess the gun when he entered the bar. He claimed that the gun was Mason's and that he took it from Mason during the fight. What's more, Walker argued that his possession of the ammunition was justified in light of Mason's unprovoked attack. The jury found otherwise. An affirmative defense, like justification, is effectively a denial of factual guilt. By denying his guilt, Walker declined to accept responsibility for his criminal conduct; therefore, the district court correctly determined that he does not qualify for the reduction. *See United States v. Greene*, 71 F.3d 232, 235 (6th Cir. 1995) ("Where, as the district court found here, a defendant concocts a story that excuses his illegal conduct, a court may find no acceptance of responsibility.").

Walker further argues that his sentence was procedurally unreasonable because the district court denied his request for a downward departure under USSG §§ 5K2.10 and 5K2.12. The former provision says that the sentencing court "may reduce the sentence below the guideline range" where "the victim's wrongful conduct contributed significantly to provoking the offense behavior." *Id.* § 5K2.10. The latter allows a downward departure where "the defendant committed the offense because of serious coercion, blackmail or duress, under circumstances not amounting to a complete defense." *Id.* § 5K2.12. Walker notes that the district court did not refer to either of these requested departures at sentencing and relies on *United States v. Duane*, 533 F.3d 441, 451 (6th Cir. 2008) for the proposition that the district court was required to provide "a reasoned basis" for its decision not to grant the downward departures. That reliance is misplaced. In *Duane*, we did not require that district courts respond to every argument for a downward departure. We merely noted that it would be "ideal[]" for the district court to "address a defendant's nonfrivolous arguments for a lesser sentence." *Id.* at 452. We "do not review a district court's decision not to depart downward unless the record shows that the district court was unaware of, or did not understand, its discretion to make such a departure." *United States v. Santillana*, 540 F.3d 428, 431 (6th Cir. 2008). Nor do we require that the district court "explicitly state that it is aware of its discretion to make such a departure." *Id.* "Rather, we presume that the district court understood its discretion, absent clear evidence to the contrary." *Id.* Walker has presented no such "clear evidence." Therefore, the district court did not abuse its discretion by declining to depart downward under USSG 5K2.10 and 5K2.12.

Finally, Walker challenges two elements of his sentence as substantively unreasonable: (*i*) the district court's calculation of his criminal history score and (*ii*) its consideration of his "acquitted conduct" at sentencing. The thrust of the first argument is that the court improperly

based Walker's entire criminal history category calculation on a single prior federal conviction. But Walker cites no authority for why doing so would constitute an abuse of discretion, and in any event, that is not what happened. Three of Walker's criminal history points came from his prior federal conviction, but he received two more points under USSG § 4A1.1(d) because the instant felon-in-possession offense occurred while Walker was on supervised release, resulting in a criminal history score of five and a criminal history category of III. Such a mechanical application of the Guidelines is not an abuse of discretion.

As for the second argument, Walker contends that he was "acquitted" of manslaughter in state court; thus, the manslaughter enhancement is improper. But the state trial court did not acquit Walker. It merely dismissed the charges against him without prejudice. As discussed previously, the manslaughter enhancement was improper, but not for this reason.

V.

Because Walker's sentence enhancement was based on insufficient factual findings, we vacate Walker's sentence and remand for further proceedings consistent with this opinion.

**ALICE M. BATCHELDER, Circuit Judge, dissenting.** For what it's worth, I agree with all but Section III of the majority opinion, which finds reversible error in the district court's application of the voluntary-manslaughter cross-reference. Even if the judge's misstatements during sentencing were substantive errors, those do not, in my view, amount to an abuse of discretion. Walker did not contest those misstatements at sentencing, nor did he contend at that hearing that the judge was obliged to make express findings of the self-defense elements, nor did he object when the judge failed to do so. Ordinarily, we require a defendant to raise his issues at sentencing to avoid forfeiture. And because, in my view, the evidence does not support Walker's self-defense claim, I would find voluntary manslaughter. So, even without granting deference or discretion to the district court judge, I would find the errors harmless.

As the majority opinion makes clear, neither the events nor the evidence of those events is in any real dispute. Walker was sitting at a bar, having a drink, and minding his own business. But, as the jury found, he was armed with a loaded handgun and, being a convicted felon, was in violation of 18 U.S.C. § 922(g)(1). The bar's surveillance cameras recorded the events. Mason, who was unarmed, attacked Walker from behind without warning, punching him savagely in the face and head. Under this two-fisted barrage, Walker turned to fend off the blows with his left arm while reaching for his pocket with his right hand. As Walker retreated towards the front door, he had drawn his gun from his righthand pocket, but Mason's continued attack brought the two of them staggering out the door and onto the ground, grappling on the sidewalk, with Mason on top of Walker. Walker fired three shots, hitting Mason in the abdomen and thigh. Walker fled, taking the gun with him. Those gunshots killed Mason. It is noteworthy that it was Walker who escalated this fight from non-deadly to deadly force and he did so in a matter of seconds.

When the federal prosecutor charged Walker with the § 922(g)(1) felon-in-possession violation, Walker asserted a justification defense, claiming that his need to defend himself against Mason's violent attack justified his having the gun and ammunition. When the evidence proved that Walker had entered the bar armed with the loaded gun, long before the attack, that defense had no reasonable likelihood of success. The jury convicted Walker as charged.

The presentence report (PSR) recommended a cross-reference to voluntary manslaughter, which would increase the Guidelines' base-offense level from 20 to 29. The PSR explained:

> The guideline for 18 U.S.C. § 922(g)(1) offenses is found in USSG §2K2.1. Subsection (c)(1)(B) provides [that] if the defendant used or possessed any firearm or ammunition cited in connection with the commission of another offense, and if death resulted, apply the most analogous offense guideline from Chapter Two, Part A, Subpart 1 (Homicide).
>
> This offense most closely aligns with Voluntary Manslaughter as defined by 18 U.S.C. § 1112(a) – Upon a sudden quarrel or heat of passion.
>
> Voluntary Manslaughter has a base offense level of 29. USSG §2A1.3(a).

PSR at p. 4, ¶ 13 (paragraph break added) (relying on U.S.S.G. § 2K2.1(c)(1)(B)). There is no dispute that a "death resulted" and there is no legitimate dispute that the most "analogous" homicide offense is voluntary manslaughter: this was the outcome of "a sudden quarrel," 18 U.S.C. § 1112(a), or "brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force," O.R.C. § 2903.03.

At sentencing, Walker argued that the § 2K2.1(c)(1)(B) cross reference did not apply because he shot Mason in self-defense, so he was not guilty of *any* homicide offense, including voluntary manslaughter; that is, there was no "commission of another offense," so there could be no cross reference. Relying on § 2K2.1's Commentary Note 14(C), which defines "another offense" to "mean[] any federal, state, or local offense, . . . regardless of whether a criminal charge was brought, or a conviction obtained," the prosecutor argued: "So the consideration is not whether

we could have charged [Walker] with manslaughter[,] [i]t's whether or not the death happened as a result of hi[s] carrying the ammunition in this case." The prosecutor concluded his argument by framing the analysis for the court this way:

> [T]his is a preponderance of the evidence issue at this point. We weren't required to prove [Walker] guilty of manslaughter at trial. This is merely - - the evidence does show [that Walker] carried the firearm and the ammunition for which he was found guilty and [that] resulted in the death of Mr. Mason after a bar fight.

Neither Walker nor his attorney challenged this.

As a brief aside, Walker's theory in this appeal is that, at the sentencing hearing, the prosecutor had to produce specific evidence and the judge had to make express findings on the record as to each of several elements in order to both prove voluntary manslaughter and disprove self-defense. Under this theory, the judge had to conduct a mini bench trial on the voluntary-manslaughter charge and self-defense defense. I do not believe that proposition is correct but, even if it were, Walker never asked the district court for that: not in his sentencing memorandum nor at any time during the sentencing hearing. At sentencing, he did not even object to or argue against the prosecutor's drastically different analytical approach. So even if a mini bench trial were the proper approach, the judge did not abuse his discretion by failing to use an approach that Walker never even requested, much less argued, and our review would be for plain error.

More importantly, I have found no support for the idea that the district court may not apply a sentencing cross reference unless it conducts a bench trial on the cross-reference offense, at which it requires that the prosecutor produce sufficient evidence to prove every element of the cross-reference offense, and from which the court must detail, on the record, its findings as to every one of those elements. Such micromanagement of a district court's sentencing procedure is improper. Moreover, it is unclear exactly what this mini bench trial (within the sentencing hearing) would entail but given that it would apparently involve the defendant's presenting affirmative

defenses, which the prosecutor would have to overcome, it suggests witnesses and cross-examination, evidentiary objections and rulings, and jury-instruction-type legal argument to properly frame the offense, defense, and elements for each. Maybe it also requires experts, expert reports, and opening and closing arguments. I cannot imagine.

The way I see it, the cross-reference Guidelines, like the consideration of relevant conduct, were written to advise the district court in exercising its discretion when sentencing a defendant whose actions led to consequences beyond those of the immediate conviction. The general premise of § 922(g)(1), as I understand it, is that bad things tend to happen when convicted felons have guns, so they are prohibited from possessing guns. A simple violation of § 922(g)(1), without more, warrants some punishment; here, 41 to 51 months in prison. But a violation that leads to bad results warrants more severe punishment, and a violation of § 922(g)(1) that leads to very bad results (such as when a death results) warrants very severe punishment; here 108 to 120 months in prison. The additional penalty is not because Walker was, would be, could be, or should be convicted of voluntary manslaughter; it is because Walker's decision to arm himself with a loaded gun led to a very bad end, warranting a very severe punishment. The cross-reference aids sentencing courts in quantifying consistently the additional punishment; here an additional 67 to 69 months. The prosecutor said this very well at the sentencing hearing:

> But I go back to the original point, your Honor, that it was the decision to walk around with a firearm. Whether or not it was at the [Westender] [B]ar that night or anywhere else, while he was on supervised release, he was carrying a loaded firearm and he should have known the consequences of those actions.
>
> Whether or not it could have resulted in the death at a bar or not, it was a knowing choice on his behalf and resulted in the death of Mr. Mason. What could have been a fist fight was not.

If the court cannot apply a cross reference unless it has a mini trial on competing evidence at sentencing and makes findings on every element of the cross-reference offense (and any defenses),

then the cross-reference concept is useless. I think it is enough that the district court—considering the record evidence, the PSR, and the defendant's objections—finds the cross-reference offense by a preponderance of the evidence.

Ordinarily "[e]ven if the district [court] judge does not make detailed findings as to these supporting facts, the Court of Appeals need not remand the case; we may look to the record to determine whether the district judge's decision was clear error." *United States v. Vaught*, 133 F. App'x 229, 233 (6th Cir. 2005) (quoted with approval by *United States v. Rios*, 830 F.3d 403, 440 (6th Cir. 2016)). Here, the district court said the most "analogous" homicide offense would be voluntary manslaughter, as the product of "a sudden quarrel." Whether we consider the state or federal definition of manslaughter, there is no legitimate claim that this was *involuntary* rather than *voluntary* manslaughter and the judge's characterization of it as voluntary manslaughter was not clear error. The most analogous homicide offense is voluntary manslaughter.

Walker's real argument is that the district court judge did not make an express statement on the record finding that the prosecutor had disproven any element of Walker's self-defense claim.[1] In Ohio, "[t]he elements of a self-defense claim differ based on whether the defendant employed deadly or non-deadly force to defend against their perceived assailant." *Ohio v. Crowe*, 145 N.E.3d 1180, 1185-86, ¶15 (Ohio Ct. App. 2019). For deadly force, the elements are that the defendant: "(1) was not at fault in creating the violent situation, (2) had a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape was the use of force, and (3) did not violate any duty to retreat or avoid the danger." *Ohio v. Claren*, 152 N.E.3d 449, 454-55, ¶14, (Ohio Ct. App. 2020) (quoting *Ohio v. Goff*, 942 N.E.2d 1075, 1082,

---

[1] Walker's self-defense claim and arguments are based entirely on Ohio law, with no mention of federal law. *See United States v. Desinor*, 525 F.3d 193, 199 (2d Cir. 2008) (explaining that, in federal courts, self-defense is under federal common law); *United States v. Butler*, 485 F.3d 569, 572 n.1 (10th Cir.2007) (same).

¶36 (Ohio 2010)) (editorial corrections omitted). And "the force used [must] be reasonable. A person is only privileged to use that force which is reasonably necessary to repel the attack." *Ohio v. Reyes-Figueroa*, 158 N.E.3d 939, 946, ¶ 27 (Ohio Ct. App. 2020). Under Ohio statute, the burden is on the prosecutor to "prove beyond a reasonable doubt that the accused person did not use the force in self-defense." O.R.C. § 2901.05(B)(1).[2]

In my view, the record evidence clearly demonstrates that Walker's use of deadly force was unreasonable and unnecessary under the circumstances and, therefore, he did not meet the elements of self-defense. When Mason—unexpectedly and viciously—started landing punches with both hands to Walker's face and head, Walker did not duck, flee, or fight back; Walker did not even protect himself with both hands. Walker immediately reached for his handgun, turned his body to free himself to shoot, and at his first opportunity, within seconds, fired his gun—three times. That was not self-defense, it was an intentionally deadly response to a violent, but unarmed assault. It was unnecessary for Walker to shoot Mason to defend himself, and his immediate escalation to deadly force was unreasonable. I am confident, based on the record evidence, that this was not self-defense. It is possible that the jury found likewise in rejecting Walker's defense claim at trial. Of course, a jury need not explain its findings for each element of a charge and defense; only a judge conducting a sentencing mini trial would have to do that.

But it turns out that, in this case, the judge *did* reveal his view of, or his thoughts on, this issue. Consider this exchange the judge had with Walker at the sentencing hearing:

---

[2] Ohio revised this statute, effective March 28, 2019, to switch the burden of proof for a self-defense claim from the defendant to the prosecutor. The Ohio Supreme Court has not considered a challenge to it or even applied it in an opinion. The three Ohio Appellate Court opinions cited here are from Ohio's Eighth District Court of Appeals, which governs the City of Cleveland and Cuyahoga County, where this case took place. The Eighth District Court has applied the statute as written, but other Ohio judges have questioned its constitutionality. *See, e.g., Ohio v. Warren*, No. 29455, 2020 WL 7863471, 2020-Ohio-6990, ¶ 32 (Callahan, P.J., concurring).

Court: How do you shoot him in the leg if he's on top of you?

Walker: I don't -- I don't know. I mean I was afraid. I mean -- I was once told that when you're in fear of your life, any shirt fits. In that situation, hood on, gloves on, this guy was seriously trying to mangle me, sir.

Court: So you're afraid for your life? Probably all of us have been in fights before, right?

Walker: Yes, sir. That wasn't.

Court: How many times have you gotten the better of somebody or somebody's got the better of you that it didn't result in death to you, or maybe you win all your fights, but for most people, they win some, they lose some. But you're not in imminent danger of being killed because somebody punches you.

Walker: True. The fear came from I see gloves, I see the hood, and there's other people here. I don't know what's going on, period.

No one puts on gloves to fight you. I mean again, you say we've been in fights. I have fought before. I had a fifth.

Court: You've not been in fights when people have put on gloves before the fight?

Walker: No, I never saw this.

Court: Okay. You're living in a different world than I.

The judge did not add a "finding" such as: I find that Walker's use of deadly force was unreasonable and unnecessary under the circumstances and, therefore, this was not self-defense. But I am confident that on this record he could have.

Because the most analogous homicide offense is voluntary manslaughter and because the record contains sufficient evidence to prove that this was not self-defense, I would hold that the district court properly calculated the advisory range at 108 to 120 months. If the court made a mistake, it was departing downward from that range. In doing so, the judge relied on his ad hoc polling of the jurors and their arbitrary recommendation of about 50 months (the other § 3553 factors actually favored a longer sentence), but that might have had a *Mason-had-it-coming* aspect. The jurors convicted Walker of the § 922(g)(1) offense, but they heard argument that Mason was a violent and irrational man; they heard testimony implying that Mason was a dealer of heroin,

fentanyl and cocaine; and they saw the video of Mason as the provocateur and aggressor who launched the premeditated and vicious surprise attack, so it is likely, or at least possible, that those jurors had little sympathy for Mason. But "Walker shot Mason" is not the whole story. Walker fired his handgun three times on a public street in a populated urban area. One of those shots—we know that at least two hit Mason—could have hit a bystander, a passerby, or a neighbor at home. If Mason had been a more sympathetic victim, the jurors might have been less inclined to leniency with Walker's hypothetical sentence.

I would have expected a sentence within the advisory range based on this record and the district court's consideration of the § 3553 factors. But because I do not find that the court committed reversible error, I would affirm the judgment. Therefore, I respectfully dissent.