# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-2901

_____

United States of America,          *
          *
       Appellee,          *   Appeal from the United States
          *   District Court for the
     v.          *   Northern District of Iowa.
          *
Kendrick Butler,          *
          *
       Appellant.          *

_____

Submitted:  April 15, 2011
Filed:  July 22, 2011

_____

Before WOLLMAN, GILMAN,[1] and MELLOY, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

A jury found Kendrick Butler guilty of six counts of bank fraud, in violation of 18 U.S.C. §§ 2 and 1344. The district court sentenced him to 80 months' imprisonment. He appeals, arguing that the district court erred by applying (1) a two-level increase for possession or use of any device-making equipment or the production or trafficking of any unauthorized access device or counterfeit access device, U.S.S.G. § 2B1.1(b)(10) (2009); and (2) a three-level increase for his aggravating role as a

_____

[1]The Honorable Ronald Lee Gilman, United States Circuit Judge for the Sixth Circuit Court of Appeals, sitting by designation.

manager or supervisor, id. § 3B1.1(b).  We vacate Butler's sentence and remand to the district court to resentence him without the enhancement under § 2B1.1(b)(10).

## I.  Background

In January 2007, Butler became involved in a bank-fraud scheme that was controlled by Lasean Lyles and Darrell Sanders.  Butler's role in the bank fraud was to recruit other individuals to cash counterfeit checks, the proceeds of which would be shared among the recruited individual, Butler, Lyles, Sanders, and other co-schemers.  Butler recruited a minor (D.M.), Sara Kimball, Eric Wicks, and Carrie Campbell.  During Butler's trial, D.M. testified that he did not believe that "there was something wrong," Trial Tr. vol 2, 227:8, until he cashed his third check for the scheme.  Kimball testified that initially she believed that the scheme was fraudulent, but cashed a check anyway after being threatened by another individual.  Wicks testified that he believed that the first check that he cashed was legitimate and was assured by Lyles that the second check was legitimate as well.  Campbell testified that she had not known that the checks she cashed were fraudulent.  The jury convicted Butler of six counts of bank fraud.  He does not appeal his conviction.

At the sentencing hearing, the district court determined that Butler's offense level was twenty, including:  (1) a two-level increase for possession or use of any device-making equipment or the production or trafficking of any unauthorized access device or counterfeit access device, U.S.S.G. § 2B1.1(b)(10); and (2) a three-level increase for his aggravating role as a manager or supervisor, id. § 3B1.1(b).  After calculating Butler's advisory guidelines range to be 70 to 87 months' imprisonment, the district court imposed an 80-month sentence, to be followed by five years' supervised release.  The district court ordered Butler to pay a $600 special assessment and restitution of $12,982.00, jointly and severally with Lyles and Sanders.

## II. Discussion

### A. Device-Making Equipment Enhancement § 2B1.1(b)(10)

The government concedes that the district court erred in applying the § 2B1.1(b)(10) enhancement. Section 2B1.1(b)(10) increases a defendant's offense level by two levels if the offense involved: (A) the possession or use of any "device-making equipment," which is defined as "any equipment, mechanism, or impression designed or primarily used for making an access device or a counterfeit access device;" or (B) the production or trafficking of any unauthorized access device or counterfeit access device. See U.S.S.G. § 2B1.1(b)(10), cmt. n.9 (citing 18 U.S.C. § 1029(e)). "Access device" is defined as "any card, plate, code, account number, [or] electronic serial number . . . (other than a transfer originated solely by paper instrument)." 18 U.S.C. § 1029(e)(1). Thus, U.S.S.G. § 2B1.1(b)(10) cannot be applied to offenses that involve a transfer originated solely by paper instrument, *i.e.*, a scheme limited to fraudulent check-cashing. The Fifth Circuit has recognized that the exclusion of transfers "originated solely by paper instrument . . . unambiguously places the passing of bad checks and similar conduct outside the scope of [§ 1029]." United States v. Hughey, 147 F.3d 423, 434 (5th Cir. 1998). Similarly, the Tenth Circuit has held that a scheme limited to passing counterfeit checks with bank account numbers printed thereon is outside the statutory definition of an access device and thus does not involve the use or possession of device-making equipment under U.S.S.G. § 2B1.1(b)(10)(A) nor trafficking or producing access devices under § 2B1.1(b)(10)(B). United States v. Tatum, 518 F.3d 769, 772-73 (10th Cir. 2008). We thus conclude that the district court erred in applying § 2B1.1(b)(10) to Butler's fraudulent check-cashing scheme.

B.  Aggravating Role Enhancement U.S.S.G. § 3B1.1(b)

Butler contends that the district court erred in applying U.S.S.G. § 3B1.1(b) to enhance his offense level because the individuals he recruited did not qualify as participants and thus he could not have been a manager or supervisor.  Section § 3B1.1(b) increases a defendant's offense level by three levels if the defendant was a manager or supervisor and the criminal activity involved five or more participants. To qualify for the adjustment, the defendant must have been the "manager[] or supervisor of one or more other participants," § 3B1.1(b), cmt. n.2; a "participant" is "a person who is criminally responsible for the commission of the offense, but need not have been convicted," § 3B1.1(b), cmt. n.1.  We review the district court's application of the sentencing guidelines *de novo*, and its factual findings for clear error.  United States v. Durham, 618 F.3d 921, 924 (8th Cir. 2010).  The district court's credibility determinations are "virtually unreviewable on appeal."  United States v. Garcia, 512 F.3d 1004, 1006 (8th Cir. 2008).  It is undisputed that the criminal activity involved five or more participants and that D.M., Kimball, Wicks, and Campbell had not been convicted.

Butler asserts that the district court erred in finding that D.M., Wicks, and Campbell were participants under § 3B1.1(b) because they did not knowingly act or intend to defraud during the scheme and thus are not persons who are criminally responsible for the commission of bank fraud.  To be criminally responsible for bank fraud, a person must "knowingly" execute a scheme "to defraud a financial institution" or to obtain money from a financial institution "by means of false or fraudulent pretenses, representations, or promises."  18 U.S.C. § 1344.  However, a "defendant's willful blindness may serve as the basis for knowledge if, in light of certain obvious facts, reasonable inferences support a finding that a defendant's failure to investigate is equivalent to burying one's head in the sand."  United States v. Chavez-Alvarez, 594 F.3d 1062, 1067 (8th Cir. 2010) (internal quotation marks omitted); see also Global-Tech Appliances, Inc. v. SEB S.A., 131 S. Ct. 2060, 2068-

71 (2011). Willful blindness is a limited exception to the requirement of actual knowledge and may be found only if the defendant was "aware of facts that put him on notice that criminal activity was probably afoot and deliberately failed to make further inquiries, intending to remain ignorant." Chavez-Alvarez, 594 F.3d at 1067.

The district court did not clearly err in finding that the recruited individuals knew or were willfully blind to the fraud. During the sentencing hearing, the district court found that their testimony that they did not know the scheme was fraudulent was "simply not credible." Sentencing Tr. 21:5. It stated that "when somebody gives you a check with your name on it and you know you've done nothing to entitle you to that money, how could you not know it's illegal?" Id. at 21:16-19. Butler's counsel offered a response that some of the recruits may have thought that the checks were prepayment for future wages, to which the district court replied "I don't believe that they actually believed that. And if they did believe it, it was because they convinced themselves and because the defendants were smooth-talking." Id. at 24:25-25:3. The district court found that "it was willful blindness, at best, or they just knew it was illegal, at worst. So they're criminally responsible, in my view," id. at 25:4-6.

The record supports the district court's determination. The recruits testified that they provided their personal information to Butler, who forwarded it to his co-schemers for addressing the fraudulent checks. The recruits knew that they had not earned the money nor had any other relationship to the businesses that supposedly issued the checks. The recruits received only part of the money from the cashed checks, while Butler and his co-schemers divided the rest. Thus, the district court did not clearly err in finding that the recruits were criminally responsible and thus were participants, U.S.S.G. § 3B1.1, cmt. n.1.

Butler's argument that Kimball acted under duress and thus was not a participant is similarly unpersuasive. Kimball did not have "a well-grounded fear of immediate death or serious bodily harm" if she refused to cash the check—she was

undecided whether she would cash the first check after being threatened, and the person that had threatened her was not present the following day when she cashed that check. See United States v. Ceballos, 605 F.3d 468, 471 (8th Cir. 2010). And she had a "reasonable opportunity" to avoid cashing the check "without facing that danger." Id. She faced no consequences when she refused to cash additional checks. Id. Kimball was thus properly considered a participant. We conclude that the district court properly applied the aggravating role enhancement under § 3B1.1(b).

## III. Conclusion

We reverse the district court's application of U.S.S.G. § 2B1.1(b)(10) and affirm its application of § 3B1.1(b). The sentence is vacated, and the case is remanded for resentencing consistent with this opinion.

_____