# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 10-3782

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Western District of Missouri. |
| Alfonso M. Tunley, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: September 21, 2011
Filed:  January 13, 2012

_____

Before WOLLMAN, BYE, and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Alfonso Tunley pled guilty to being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).  After a contested sentencing hearing, the district court[1] sentenced Tunley to 120 months imprisonment.  Tunley appeals, challenging the district court's application of the Sentencing Guidelines. We affirm.

---

[1] The Honorable Dean Whipple, United States District Judge for the Western District of Missouri.

For over a year, Tunley was in an "off and on again" romantic relationship with Dacia Wright. In the early morning hours of November 16, 2008, after a night of attending clubs and drinking, the pair arrived at Tunley's brother's house, where a party was already underway. At the party, Wright attacked Tunley and was restrained by onlookers. The couple left the party separately after Wright's outburst. Tunley went home by himself. But Wright arrived at his residence shortly thereafter. Police were dispatched to Tunley's home after they received a call from Tunley stating that his friend had been shot. When police officers arrived, they stopped Tunley as he was walking away from his house. Police found a handgun lying on the sidewalk near Tunley. Police then entered Tunley's house and found Wright dead on the floor of the bedroom. She had been shot in the head.

On April 8, 2009, a one-count indictment was returned by a grand jury charging Tunley with being a felon in possession of a firearm in violation of sections 922(g)(1) and 924(a)(2), based on his possession of the handgun on November 16, 2008. On February 2, 2010, Tunley pled guilty to the one-count indictment. The United States Probation Office prepared a pre-sentence investigation report (PSR) setting Tunley's base offense level at thirty-eight. The PSR also included a three-level reduction for acceptance of responsibility. In arriving at the base offense level of thirty-eight, the PSR applied a cross-reference to the Guidelines section 2A1.2 pursuant to section 2K2.1(c)(1)(B), based on Tunley's possession of the firearm in connection with another felony offense where death resulted. Tunley objected to the application of section 2A1.2, arguing that Wright's death was not murder but instead was justified as self-defense.

The district court conducted a sentencing hearing on November 18, 2010, at which ten government witnesses and five defense witnesses testified. The court made credibility findings and concluded that sections 2K2.1(c)(1)(B) and 2A1.2 applied

because the Government had proven by a preponderance of the evidence that Tunley was guilty of second degree murder. As a result, the district court overruled Tunley's objection. The court sentenced Tunley to 120 months imprisonment, the statutory maximum.

II.

On appeal, Tunley argues that the district court erred in arriving at his base offense level in its application of the Sentencing Guidelines. Tunley contends that the Government failed to disprove Tunley acted in lawful self-defense. In the alternative, Tunley argues that the district court erred in finding that Tunley's actions constituted second degree murder and not voluntary manslaughter. "We review de novo the district court's application of the Guidelines, and we review for clear error the district court's factual findings." United States v. Betts, 509 F.3d 441, 445 (8th Cir. 2007). "The district court's credibility determinations are 'virtually unreviewable on appeal.'" United States v. Butler, 646 F.3d 1038, 1041 (8th Cir. 2011) (citation omitted).

Guidelines section 2K2.1(c)(1) directs that "[i]f the defendant used or possessed any firearm or ammunition in connection with the commission . . . of another offense" and death resulted, the district court is to apply "the most analogous offense guideline" from section 2A1. United States Sentencing Commission, Guidelines Manual, §2K2.1(c)(1). Section 2A1, in turn, includes instructions for different levels of homicide under federal law. See USSG §§2A1.1–5. In the present case, the district court determined that the Government proved second degree murder by a preponderance of the evidence.[2] As a result, the district court arrived at the base offense level of thirty-eight. See USSG §2A1.2.

---

[2] Under federal law, "[m]urder is the unlawful killing of a human being with malice aforethought." 18 U.S.C. § 1111(a). Any murder that is not enumerated as a first degree murder is categorized as murder in the second degree. Id.

Tunley first contends that the Government failed to disprove his claim that he shot Wright in self-defense. "In the absence of a conviction for another felony offense, the government must prove by a preponderance of the evidence all of the essential elements of the underlying felony offense, including the absence of any defenses." Betts, 509 F.3d at 445.

If Tunley had been charged and tried in Missouri, the State of Missouri would have had the burden of proving beyond a reasonable doubt that Tunley did not act in lawful self-defense.[3] See Missouri v. Henderson, 311 S.W.3d 411, 414 (Mo. Ct. App. 2010); see also Betts, 509 F.3d at 445-46. Missouri Revised Statute section 563.031 "sets forth the parameters for the use of non-deadly and deadly force in self-defense and in defense of others." State v. Clinch, 335 S.W.3d 579, 586 (Mo. Ct. App. 2011).

---

[3] Self-defense as a justification for killing is not codified by federal statute, but is instead a "basic right, recognized by many legal systems from ancient times to the present day." See McDonald v. City of Chicago, 130 S. Ct. 3020, 3036 (2010). In addressing self-defense claims to murder charges under 18 U.S.C. § 1111(a), courts have traditionally relied on the common law definition of self-defense. See, e.g., United States v. Milk, 447 F.3d 593, 598 (8th Cir. 2006) ("If a person reasonably believes that force is necessary to protect himself or another person from what he reasonably believes to be unlawful physical harm about to be inflicted by another and uses such force, then he acted in self defense or defense of another person." (quoting district court jury instructions)); see also Brown v. United States, 256 U.S. 335, 343 (1921) ("[I]f a man reasonably believes that he is in immediate danger of death or grievous bodily harm from his assailant he may stand his ground and that if he kills him he has not succeeded the bounds of lawful self defence."); 2 Wayne R. LaFave, Substantive Criminal Law § 10.4 (2d ed.) (West 2011) (discussing theory of self-defense). In their briefing, the parties do not address the appropriateness of Tunley's reliance on a definition of self-defense found in state law against an enhancement based on a federal offense. Because we find that Tunley's claim of self-defense under the Missouri statute is not supported by the facts, we decline to address the more complex issues of due process and federalism that might otherwise be implicated by Tunley's reliance on Missouri's self-defense statute.

The version of section 563.031 which was in effect on the date that Tunley shot Wright states in pertinent part:

> 1. A person may, subject to the provisions of subsection 2 of this section, use physical force upon another person when and to the extent he or she reasonably believes such force to be necessary to defend himself or herself or a third person from what he or she reasonably believes to be the use or imminent use of unlawful force by such other person . . . .
>
> 2. A person may not use deadly force upon another person under the circumstances specified in subsection 1 of this section unless:
>
> > (1) He or she reasonably believes that such deadly force is necessary to protect himself or herself or another against death, serious physical injury, or any forcible felony; or
> >
> > (2) Such force is used against a person who unlawfully enters, remains after unlawfully entering, or attempts to unlawfully enter a dwelling, residence, or vehicle lawfully occupied by such person.

Mo. Rev. Stat. § 563.031.1-2 (2008). Thus, under Missouri law, Tunley would have been justified in using deadly force against Wright if Tunley reasonably believed such force was necessary to defend himself from the use or imminent use of unlawful force by Wright and either: (1) "reasonably believe[d] that such deadly force [was] necessary to protect himself . . . against death, serious physical injury, or any forcible felony"; or (2) such force was used against Wright after she unlawfully entered Tunley's residence, remained after unlawfully entering, or attempted to unlawfully enter. See id.

Tunley asserts that the evidence presented to the district court showed that his shooting of Wright was justified as a defense of himself and his home. According to

Tunley's testimony at the sentencing hearing, Tunley left his brother's party and went to a nearby park to avoid Wright. While at the park, Tunley received a number of phone calls from Wright, but he ignored them. After Wright stopped calling, Tunley waited approximately five minutes and went home. Tunley testified that once he arrived home, he left the front door open and began to go through the house to determine whether anyone was there. During this sweep, Tunley saw Wright's shadow approaching his front door, and he jogged to the door to prevent her from entering. A tug-of-war resulted over the closed-but-unsecured storm door. Tunley claimed that he held the door closed with his left hand while he called his brother using a cellphone in his right hand. Wright eventually gained entry. According to Tunley, once Wright was inside, she chased Tunley into the bedroom and continued her attack against him. Tunley was kicked by Wright, and he fell to the floor. While he was on the floor, he grabbed a handgun that was under some clothes in his closet, chambered a round, and shot Wright.

The district court rejected Tunley's account of what occurred in the house as lacking credibility. Instead, the trial court found that the evidence showed that Tunley killed Wright with malice aforethought and that his claim of self-defense was a "cover-up." In its factual findings, the district court noted that Tunley called his brother and a friend minutes before he called 9-1-1. The court discounted Tunley's testimony of a struggle at the front door. Although the court found that the confrontation between Wright and Tunley continued, the court interpreted the evidence as showing that Tunley let Wright into the house, that it "may have been payback time" and that Tunley "knew he had a loaded gun in the house." In deciding whether the shooting of Wright was murder or manslaughter, the court found that the evidence supported a charge of second degree murder. Specifically, the court concluded that Tunley had the requisite intent to kill Wright when he retrieved the gun, chambered the round, pointed it at Wright, and shot her in the head.

After an independent review of the record, we find no clear error in the district court's factual findings. Tunley's testimony that Wright broke into his house by force was discredited by the Government. There is no evidence to corroborate Tunley's assertion that a tug-of-war occurred at the storm door, and Tunley's claim that he was able to call his brother while trying to keep the door closed strains credulity. Furthermore, Tunley's recollection of the timing of events is severely undermined by phone records. According to Tunley, he waited in a park after he left his brother's party until Wright's phone calls stopped. Wright's last phone call to Tunley occurred at 3:48 a.m. The park was less than four blocks from Tunley's house, and Tunley testified that his home was very small and quickly navigable. Tunley did not call his brother until 4:25 a.m.—thirty-seven minutes after the last call from Wright. Thus, we find no error in the district court's decision to disbelieve Tunley's claim that his defensive sweep of the home was suddenly interrupted by an altercation at the front entrance.

Tunley's testimony of what happened in the house was dramatically different from his original account to police. Tunley told the 9-1-1 dispatcher that his friend had been shot, but he refused to answer any questions about who had shot her. When police arrived, Tunley told the officers that he had been involved in a struggle with two men who had jumped him and his girlfriend and that shots had been fired in the altercation. Tunley told the officers that the reason he was on the sidewalk was because he was chasing after the men. We find no error in the district court's conclusion that the Government disproved Tunley's claim of self-defense as an after-the-fact fabrication aimed at furthering his own legal defense.

Tunley's second claim of error is that the district court erred by finding that Tunley's actions amounted to second degree murder rather than manslaughter. Because Tunley failed to raise this claim of error before the trial court, our review is limited to plain error review. See United States v. Jones, 574 F.3d 546, 549 (8th Cir.

2009). "It is well established that if the defendant had enough time between the provocation and the killing to reflect on his or her intended course of action, then the mere fact of passion would not reduce the crime below murder." United States v. Milk, 447 F.3d 593, 599 (8th Cir. 2006) (citations omitted); see also Mullaney v. Wilbur, 421 U.S. 684, 696 (1975). The district court found by a preponderance of the evidence that Tunley formed his intent to kill Wright when he chambered a round, aimed, and shot Wright in the head. Testimony of the chief medical examiner supported a finding that Tunley shot Wright from a distance greater than an arm's length. A live bullet was found under Wright's body, corroborating Tunley's testimony that he ejected the bullet to make sure that a live round was chambered. Tunley had adequate time to reflect on his intended course of action. Therefore, the district court did not err in finding that the shooting constituted second degree murder rather than voluntary manslaughter and that Guidelines sections 2K2.1(c)(1)(B) and 2A1.2 applied.

III.

We affirm the judgment of the district court.

_____