# United States Court of Appeals
### For the Eighth Circuit

_____

No. 20-1334
_____

United States of America

*Plaintiff - Appellee*

v.

Xzavier Justin Lee Clark

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Southern District of Iowa - Des Moines

_____

Submitted: January 11, 2021
Filed: June 7, 2021
[Published]

_____

Before SMITH, Chief Judge, KELLY and ERICKSON, Circuit Judges.

_____

PER CURIAM.

In October 2019, Xzavier Clark pleaded guilty to one count of possession of a firearm by an unlawful user of a controlled substance. See 18 U.S.C. § 922(g)(3).

The district court[1] sentenced him to 120 months' imprisonment, to be followed by a three-year term of supervised release. He now appeals his sentence, and we affirm.

## I.

On July 27, 2019, law enforcement officers observed Clark with several members of the C-Block gang in downtown Des Moines, Iowa, and watched as he got into the front passenger seat of a vehicle. Officers tried to stop the vehicle, but it sped away, leading officers on a chase during which it exceeded the speed limit by at least 25 miles per hour and drove through multiple intersections without stopping. During the pursuit, the officers saw Clark throw a handgun out the window. The vehicle eventually hit a curb and stopped, and both Clark and the driver were placed under arrest. Officers searched the vehicle and recovered two baggies of marijuana from the driver's door pocket. They also detected marijuana residue on the floor below Clark's seat, and a sample of Clark's urine later tested positive for the presence of marijuana. Officers then returned to the spot where they had seen Clark discard the gun and found a loaded .40 caliber pistol. Clark was charged with one count of possessing a firearm as an unlawful user of a controlled substance, 18 U.S.C. § 922(g)(3). He pleaded guilty in October 2019, without the benefit of a plea agreement.

Clark's Presentence Investigation Report (PSIR) calculated Clark's base offense level at 14. See United States Sentencing Guidelines § 2K2.1(a)(6) (2018). After recommended adjustments under § 2K2.1(b)(6)(B) and § 3E1.1(a)-(b), the total offense level was 15. Clark's criminal history category was IV. See id. §§ 4A1.1, 4A1.2. Thus, the PSIR recommended an advisory Guidelines range of 30 to 37 months' imprisonment. See id. ch. 5, pt. A (Sentencing Table).

---

[1]The Honorable Rebecca Goodgame Ebinger, United States District Judge for the Southern District of Iowa.

The government objected, arguing that the district court should apply the cross-reference in § 2K2.1(c)(1)(A) of the Sentencing Guidelines based on evidence that Clark had used the firearm "in connection with the commission or attempted commission of another offense"—specifically, attempted murder—resulting in a greater offense level. See id. §§ 2X1.1(c)(1), 2A2.1(a)(1). The government alleged that on June 20, 2019, Clark used the same .40 caliber pistol underlying the present offense to shoot a man named Layshawn Scott, a member of the rival Gunna Gang. For his part, Clark disclaimed membership in the C-Block gang and argued that the government did not have sufficient evidence to prove that he was the shooter, emphasizing that he was never arrested or charged with any crime relating to the June 20 shooting.

At Clark's sentencing hearing, the district court heard testimony from Detective Jeffrey George, a member of the Des Moines Police Department's firearm- and gang-related crime unit. Detective George testified about the June 20 shooting of Scott, the C-Block gang and its rival gangs, Clark's suspected membership in C-Block and his known associates, and various encounters between Clark and law enforcement since 2016. Crediting Detective George's testimony, the district court concluded that the government had established by a preponderance of the evidence that Clark shot at Scott on June 20, 2019, and that his actions were consistent with a charge of attempted murder. The district court sustained the government's objection to the PSIR and applied the cross-reference, which resulted in a base offense level of 33. See id. §§ 2K2.1(c)(1)(A), 2X1.1(c)(1), 2A2.1(a)(1). As a result, the advisory Guidelines range became the statutory maximum sentence of 120 months. See 18 U.S.C. § 924(a)(2). The district court imposed a sentence of 120 months.

## II.

Clark first raises a procedural challenge, arguing that the district court erred in applying the cross-reference to § 2A2.1(a)(1). We review the district court's factual findings for clear error and its application of the Guidelines de novo. United States v. Bryant, 913 F.3d 783, 786 (8th Cir. 2019). For sentencing purposes, the district court "need only find facts . . . by a preponderance of the evidence," United States v. Mann, 701 F.3d 274, 309 (8th Cir. 2012), and may consider any relevant information, even if it would be inadmissible at trial, "provided that the information has sufficient indicia of reliability to support its probable accuracy," USSG § 6A1.3(a). We reverse for clear error "only when the entire record definitely and firmly illustrates that the lower court made a mistake." United States v. Sainz Navarrete, 955 F.3d 713, 720 (8th Cir. 2020) (cleaned up).

A sentencing court looks to § 2K2.1 to determine the base offense level for a defendant convicted of unlawful possession of a firearm. If the court finds the defendant used the firearm "cited in the offense of conviction in connection with the . . . attempted commission of another offense," USSG § 2K2.1(c)(1), however, §§ 2K2.1(c)(1)(A) and 2X1.1(c)(1) direct the court to cross-reference to the Guidelines section that expressly covers the other offense. Here, the government sought a cross-reference to § 2A2.1 based on its assertion that Clark shot Scott with the same gun he pleaded guilty to possessing. See id. § 2A2.1(a)(1) (providing for a base offense level of 33 "if the object of the offense would have constituted first degree murder"); id. § 2A2.1, comment. (backg'd.) (explaining that § 2A2.1 applies not only to murder but also to "offenses of assault with intent to commit murder and attempted murder"). Clark does not challenge the district court's finding that the shooting of Layshawn Scott qualified as attempted murder. Instead, he argues that the government failed to prove by a preponderance of the evidence that he was the one who shot him.

-4-

At sentencing, the government presented evidence that spent shell casings from the June 20 shooting had been fired from the same pistol that Clark admitted he possessed approximately one month later, on July 27. Detective George also testified that witnesses to the June 20 shooting described the suspect vehicle as a BMW sedan, and that ten days later, on June 30, law enforcement officers saw Clark get into a BMW sedan in downtown Des Moines.

In addition, Detective George detailed Clark's connections to C-Block and testified that Clark is "a known member of the C-Block gang" and was one of their "main shooters," meaning he was "one of the select few" gang members "willing to fire a firearm at somebody else." Detective George also described the rivalry between C-Block and the Gunna Gang—the gang Scott belonged to—and testified that it "was widely known that the Gunna Gang was responsible" for the January 2017 shooting death of a C-Block member. Moreover, Detective George learned from an investigation into another shooting that Clark was in an "ongoing dispute" with members of the Gunna Gang and was suspected of shooting at one of them in March 2019. The government also introduced Clark's Facebook posts into evidence. In some posts, Clark made threats of revenge for inter-gang violence, including for the January 2017 shooting, and in others, he bragged about never being caught without a firearm.

Although the evidence of the June 20 shooter's identity could have been stronger, we are not definitely and firmly convinced on this record that the district court erred in finding that Clark shot at Layshawn Scott on June 20, 2019. See Sainz Navarrete, 955 F.3d 713 at 720; cf. United States v. Wilson, 992 F.2d 156, 158 (8th Cir. 1993) (per curiam) (affirming application of § 2A2.1 even though drive-by shooting may have involved two guns and there was no direct evidence that a pellet from the defendant's gun struck the victim). Detective George testified about physical evidence linking Clark to the shooting and described the ongoing rivalry between the two gangs with sufficient detail to provide a general motive for violence

directed at a rival gang member. The district court's finding that Detective George was credible and had knowledge about the matters on which he testified is "entitled to special deference." United States v. Mathis, 911 F.3d 903, 908 (8th Cir. 2018) (cleaned up). Clark has not shown that the district court erred in applying the cross-reference to attempted murder.

### III.

Clark also argues that his 120-month sentence of imprisonment is substantively unreasonable. "We examine the substantive reasonableness of the sentence by considering the totality of the circumstances, including the extent of any variance from the Guidelines range and the strength of the stated justification, while viewing the district court's decision through a deferential abuse-of-discretion lens." United States v. Toothman, 543 F.3d 967, 970 (8th Cir. 2008) (cleaned up) (citing Gall v. United States, 552 U.S. 38, 51-52 (2007)). A sentence may be substantively unreasonable even if it falls within the Guidelines range. See United States v. Price, 542 F.3d 617, 622 (8th Cir. 2008) (explaining that the presumption of reasonableness we often accord a within-Guidelines sentence "may be rebutted by reference to the statutory sentencing factors found in 18 U.S.C. § 3553(a)").

Here, however, the bulk of Clark's argument rests on the contention that the district court erred in applying the cross-reference to attempted murder, which we have determined was not in error. Moreover, the record demonstrates that the district court meaningfully considered the § 3553(a) factors. Though Clark believes the district court should have placed greater weight on the mitigating evidence, such as his strong support network and relative youth, we conclude that the district court acted within its discretion when it found that Clark's "repeated . . . disregard for the safety of the community" and "the need to protect the public" warranted a sentence of 120 months. Cf. Bryant, 913 F.3d at 786, 788-89 (concluding that the district court "acted within its discretion when it decided to impose a Guidelines-range sentence,"

despite the defendant's age and "poor mental and physical condition," given his "long history of controlling and abusive behavior towards women").

## IV.

We affirm the judgment of the district court.

_____