# United States Court of Appeals
### For the Eighth Circuit
_____

No. 23-2589
_____

United States of America

*Plaintiff - Appellee*

v.

Ryan A. Fleming, Jr.

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis
_____

Submitted: April 10, 2024
Filed: May 31, 2024
_____

Before LOKEN, MELLOY, and KOBES, Circuit Judges.
_____

MELLOY, Circuit Judge.

Shots from a vehicle struck an officer's car in Illinois, and the officer reported the model, color, and license-plate number of the vehicle. Later that night, after the vehicle crossed into Missouri, an officer in St. Louis attempted to stop the vehicle. The driver, Ryan Fleming, led the officer on a chase hitting speeds over 100 mph. Mr. Fleming eventually crashed his vehicle in dramatic fashion, exited his vehicle, and fled the scene on foot, leaving a semiautomatic rifle on the ground outside the

driver's door and a passenger in the front seat. The St. Louis officer chased Mr. Fleming into a dark parking structure and eventually apprehended him.

A jury convicted Mr. Fleming of being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). He now challenges the denial of a motion for a new trial and the application of offense-level adjustments pursuant to United States Sentencing Guidelines Manual § 2K2.1(b)(6)(B) (using a firearm with another felony offense) and § 3C1.2 (reckless endangerment during flight). Finding no error, we affirm the judgment of the district court.[1]

I.

We will affirm the district court's ruling on a motion for a new trial absent a clear abuse of discretion. *See United States v. Williams*, 340 F.3d 563, 571 (8th Cir. 2003). In addressing a motion for a new trial, a district court may weigh the evidence and grant a new trial if convinced that the jury's findings are against the clear weight of the evidence such that the interests of justice require a new trial. *See* Fed. R. Crim. P. 33(a); *see also United States v. Knight*, 800 F.3d 491, 504 (8th Cir. 2015) (explaining that new trials under Rule 33 are "reserved for exceptional cases in which the evidence preponderates heavily against the verdict").

Mr. Fleming's arguments for a new trial relate to the "knowing possession" element of his Section 922 offense and depend on events that occurred as he exited his vehicle after the crash. *See United States v. Chatmon*, 742 F.3d 350, 352 (8th Cir. 2014) ("Knowing possession of a firearm under § 922(g) may be either actual or constructive."). According to Mr. Fleming, he did not possess the semiautomatic rifle. Rather, the rifle was present in the vehicle and the violent crash caused it to move about within the vehicle, coming to rest against the driver's door and falling to the ground when he opened the door. At trial, the officer from the chase testified

---

[1]The Honorable Sarah E. Pitlyk, United States District Judge for the Eastern District of Missouri.

that Mr. Fleming exited the vehicle with the rifle in his "hand or hands" and dropped the rifle.

Mr. Fleming argues two videos that captured images of his vehicle during his exit disprove the officer's testimony. One video, from a building-mounted camera, shows the crash and the scene after the crash from in front of Mr. Fleming's vehicle. The other video, the pursuing officer's bodycam video, shows the scene from the rear of Mr. Fleming's vehicle.

Both videos are unclear due to bright-light interference. By the time Mr. Fleming exited his vehicle, the pursuing officer had stopped behind Mr. Fleming, and the officer's headlights created substantial glare. From the front, it is difficult to discern precisely when Mr. Fleming's driver's door opens, although it appears that an object lands on the ground near the driver's door slightly before Mr. Fleming appears to exit the vehicle. The bodycam video also suffers from bright-light interference due to several streetlights in the area. In addition, the officer's movement and the resulting movement of the body-mounted camera make the images captured from the officer's perspective unclear.

Mr. Fleming does not appear to seriously assert that the cameras captured his exit from the vehicle, and his hands in particular, with sufficient clarity to directly disprove the officer's testimony. Rather, Mr. Fleming argues that because an object appears to land on the ground before his body exits the vehicle, the officer could not have seen the semiautomatic rifle in his hands. He also argues generally that the videos show the officer did not have a clear line of sight to view Mr. Fleming's hands at the moment Mr. Fleming exited the vehicle. Mr. Fleming emphasizes that the officer's vehicle was behind and to the passenger side of his own vehicle such that his own vehicle blocked the officer's view. In this regard, the bodycam video shows that, when Mr. Fleming was fleeing the vehicle, the officer was standing outside the officer's vehicle and behind Mr. Fleming's vehicle toward the passenger side, although the officer had stepped a short distance from his own driver's side door (a

-3-

short distance toward the driver's side of Mr. Fleming's vehicle). The unclear bodycam video lacks the detail necessary to directly disprove the officer's testimony.

Based on the foregoing, we find no abuse of discretion in the district court's denial of Mr. Fleming's motion for a new trial. Mr. Fleming's attorney pointed out the videos' shortcomings to the jury. He also questioned the pursuing officer about lines of sight and the relative vantage points of the officer and the cameras. The jury's consideration of the officer's testimony alongside the balance of the evidence as a whole, including the unclear video evidence, serves as a quintessential credibility determination. *See, e.g.*, *United States v. Waloke*, 923 F.3d 1152, 1156–57 (8th Cir. 2019) (acknowledging a witness's credibility shortcomings, but rejecting a defendant's motion for a new trial because the facts did not present an "exceptional" case).

Further, in light of the dangerous high-speed chase, the jury was not required to accept Mr. Fleming's assertions that he had not knowingly possessed the rifle while still in the vehicle. *See, e.g.*, *United States v. Clark*, 45 F.3d 1247, 1250 (8th Cir. 1995) (noting that jurors may infer a culpable state of mind based on flight). In this regard, during closing arguments, counsel for the United States emphasized the unlikelihood of Mr. Fleming's theory of the case relative to the permissible inference of possession: that a large semiautomatic rifle unknown to Mr. Fleming or in the sole possession of his passenger could have moved through a vehicle past seat belts, past head rests, around deployed airbags, and past at least one human body to land precisely where it might fall out of an unsuspecting driver's door. Accordingly, the district court did not abuse its discretion in denying the motion for a new trial.

II.

At sentencing, the district court applied the two-level enhancement of U.S.S.G. § 3C1.2 for "recklessly creat[ing] a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer." The district court based the Section 3C1.2 enhancement on the high-speed

chase.  The district court also applied a four-level enhancement pursuant to U.S.S.G. § 2K2.1(b)(6)(B) for the "use[] or possess[ion]" of the semiautomatic rifle "in connection with another felony offense."   The district court found the Section 2K2.1(b)(6)(B) requirement of "another felony offense" was satisfied because Mr. Fleming committed the Missouri felony of "resisting arrest," Mo. Rev. Stat. § 575.150.[2]  Factual support for application of the Section 2K2.1(b)(6)(B) enhancement came from officer testimony: (1) an Illinois officer described reporting that shots had been fired at officers from Mr. Fleming's vehicle; and (2) the St. Louis officer described witnessing Mr. Fleming's armed exit following the crash and chasing Mr. Fleming on foot from the scene of the crash and into a dark parking garage before taking him into custody.

There is no colorable argument to be made that the Section 3C1.2 enhancement, standing alone, was inappropriate.  The high-speed chase was reckless and created a substantial risk of death or serious injury to others.  As such, Mr. Fleming's arguments focus on the Section 2K2.1(b)(6)(B) enhancement and on alleged double counting through the use of both enhancements to determine his adjusted offense level.  *See* U.S.S.G. § 3C1.2 cmt. n.1 ("Do not apply this enhancement where the offense guideline in Chapter Two, or another adjustment in Chapter Three, results in an equivalent or greater increase in offense level solely on the basis of the same conduct."); *see also United States v. Pena*, 339 F.3d 715, 719

---

[2]Mo. Rev. Stat. § 575.150 provides in part:

1. A person commits the offense of resisting . . . arrest, detention, or stop if he or she knows or reasonably should know that a law enforcement officer is making an arrest or attempting to lawfully detain or stop an individual or vehicle, and for the purpose of preventing the officer from effecting the arrest, stop or detention, he or she:
> (1) Resists the arrest, stop or detention of such person by . . . fleeing from such officer; . . . .
5. The offense of resisting or interfering with an arrest is a class E felony for an arrest for a:
> (1) Felony; . . . .

(8th Cir. 2003) ("Double counting occurs when 'one part of the Guidelines is applied to increase a defendant's punishment on account of a kind of harm that has already been fully accounted for by application of another part of the Guidelines.'" (citation omitted)).[3]

Specifically, Mr. Fleming argues that: (1) he did not exit his vehicle with the rifle; (2) the St. Louis officer chasing him after the crash was seeking to stop him for questioning and not to "arrest" him for an underlying "felony" as required to make the Missouri offense of resisting arrest a felony, *compare* Mo. Rev. Stat. § 575.150 (misdemeanor resisting, generally) *with* Mo. Rev. Stat. § 575.150.5.1 ("The offense of resisting . . . arrest is a class E felony for an arrest for a: (1) Felony; . . . ."); (3) the high-speed chase supporting the Section 3C1.2 enhancement was not factually separate from his later exit from the crashed vehicle and flight on foot; and (4) even if the later flight on foot was conceptually separate from the high-speed chase, he did not "use or possess" the rifle "in connection with" that flight because he left the rifle on the ground by the car.

We review factual findings at sentencing for clear error under the preponderance-of-the-evidence standard. *See United States v. Bullock*, 35 F.4th 666, 670 (8th Cir. 2022) (reviewing determinations underlying the U.S.S.G. § 2K2.1(b)(6)(B) enhancement for clear error). We reject Mr. Fleming's factual challenges. The district court expressly found the St. Louis officer credible and accepted his testimony describing Mr. Fleming as exiting the vehicle with the

_____

[3]The government points out that, in the both the district court and on appeal, the precise focus of Mr. Fleming's objections remain somewhat confusing. Together, the enhancements increased his offense level by six levels. His challenges relate primarily to the four-level enhancement of Section 2K2.1(b)(6)(B), but he asserts that his offense level was determined to be two levels too high. As explained herein, the material requirement for present purposes is the existence of evidence to support two independent bases for the two separate enhancements. To the extent the government asserts some aspect of Mr. Fleming's argument was waived, we decline to apply a theory of waiver.

semiautomatic rifle.  For the same reasons as described above regarding the motion for a new trial, we find no clear error in the district court's factual finding.

Regarding the Missouri felony offense of resisting arrest, we again find no clear error.  Testimony at a second sentencing hearing supports the district court's factual conclusion that the St. Louis officer pursued Mr. Fleming on foot to arrest him for a felony.[4]  Mr. Fleming points to the facts that his car was the subject of the report from Illinois and that more than an hour had passed between the Illinois shooting and his crash in St. Louis.  According to Mr. Fleming, because the St. Louis officer did not know if the occupants of the car were the same people who had shot at an officer in Illinois, the St. Louis officer was only pursuing him for questioning.  But there can be little doubt that the St. Louis officer was effectuating an arrest at the time Mr. Fleming fled from the vehicle.  The officer knew at that point that some occupant of the car had shot at an Illinois police officer and Fleming had led the officer on a high-speed chase in downtown St. Louis.  The St. Louis officer was clearly going to do more than just question Mr. Fleming.

The harder questions are whether Mr. Fleming "used or possessed" the semiautomatic rifle "in connection with" the Missouri felony of resisting arrest and whether that offense was truly separate from the high-speed chase supporting the Section 3C1.2 enhancement.  Mr. Fleming argues that dropping or leaving the rifle on the ground is not "use or possession" of the rifle in connection with his flight on

---

[4]The district court held two sentencing hearings because it became clear at a first sentencing hearing that Mr. Fleming's general objection concerning double counting actually rested on the rejection of unobjected-to facts in the PSR.  The district court, recognizing this nuance, held a second hearing and permitted briefing to allow Mr. Fleming the opportunity to challenge the facts and allow the United States the opportunity to support the previously unobjected-to factual statements in the PSR.  In this regard, the sentencing judge had presided over the trial and heard all of the trial testimony.  Information about events in Illinois that preceded the high-speed chase, however, had been largely excluded from trial, and these facts were material to whether Mr. Fleming's flight on foot amounted to resisting a felony arrest under Missouri law (a felony) or resisting a misdemeanor arrest (a misdemeanor).

foot. In fact, he characterizes the situation as abandonment of the opportunity to use the rifle. The government, on the other hand, argues possession of the rifle and exiting the vehicle with the rifle served to embolden Mr. Fleming to resist arrest by fleeing on foot after the crash and after the car came to a rest. *See Bullock*, 35 F.3d at 670. ("Under application note 14(A), the enhancement applies 'if the firearm or ammunition facilitated, or had the potential of facilitating, another felony offense[.]"). While the record did not compel the district court's finding, we find no clear error in the conclusion that possession or use of the rifle emboldened Mr. Fleming to flee on foot. Our Court has repeatedly approved the "emboldenment" theory for use with Section 2K2 enhancements, and the district court permissibly found that theory applicable to Mr. Fleming. *See, e.g.*, *United States v. Quinn*, 812 F.3d 694, 700 (8th Cir. 2016).

Finally regarding the separateness or independence of the post-crash flight compared to the high-speed chase, we again find no clear error. The distinctions that may exist between independent offenses and continuous courses of conduct may be highly varied in any given situation. The analysis of such detailed factual scenarios is best undertaken by the district court. Here, the court noted that Mr. Fleming could have stayed in his completely stopped and severely damaged car: the airbags had deployed, the front fender and other parts had been torn off, and Mr. Fleming was injured (officers took him to a hospital after taking him into custody). According to the St. Louis officer, after seeing the rifle, the officer assumed that Mr. Fleming was carrying another gun. The officer explained this assumption as consistent with his safety training and referred to the assumption as the "plus one" rule. Although Mr. Fleming was not found with another gun, the officer labored under this assumption as he chased Mr. Fleming alone and in the dark into a parking ramp where he searched for and eventually located Mr. Fleming. The district court did not clearly err in viewing the flight on foot as something that was both separate in time and different in nature from the preceding high-speed chase. *See, e.g.*, *State v. Pitiya*, 623 S.W.3d 217, 221 (Mo. Ct. App. 2021) (finding the units of prosecution for resisting arrest in Missouri to be discrete acts of resistance even if occurring in a sequence).

We affirm the judgment of the district court.

_____