# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 24-1174

———————————————

United States of America

*Plaintiff - Appellee*

v.

Larry D. Bradley

*Defendant - Appellant*

——————————

Appeal from United States District Court
for the Western District of Missouri - Kansas City

——————————

Submitted: November 22, 2024
Filed: February 7, 2025

——————————

Before SHEPHERD, ERICKSON, and GRASZ, Circuit Judges.

——————————

SHEPHERD, Circuit Judge.

Larry Bradley was convicted of four gun offenses in connection with the fatal shooting of Thomas "Blake" Willett. After a previous successful appeal, on remand at sentencing and over Bradley's objection and claim of self-defense, the district court calculated Bradley's offense level by applying the United States Sentencing Guidelines (USSG) cross-reference for voluntary manslaughter. On appeal, Bradley

argues that the district court[1] erred in rejecting his self-defense claim and in applying the cross-reference. Having jurisdiction under 28 U.S.C. § 1291, we affirm.

## I.

In March 2020, Willett died from a gunshot wound to the chest. Witnesses said Bradley was the shooter. Investigators located Bradley that evening, and Bradley led the officers to a tire where he had hidden the gun. An axe (or hatchet) was lying nearby, behind the tire. Bradley admitted he had shot Willett, but said, "I had to do it, [Willett] came at me with a hatchet."

Bradley was charged with one count of being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (Count 1); one count of stealing a firearm, in violation of 18 U.S.C. § 924(l) (Count 2); one count of possession of a stolen firearm, in violation of 18 U.S.C. §§ 922(j) and 924(a)(2) (Count 3); and one count of receiving a firearm while under indictment, in violation of 18 U.S.C. §§ 922(n) and 924(a)(1)(D) (Count 4).

He proceeded to trial and was convicted of all four counts. Prior to sentencing, a Presentence Investigation Report (PSR) was prepared which, in calculating Bradley's total offense level, recommended applying the USSG cross-reference for second-degree murder. Bradley objected to the cross-reference, contending that he acted in self-defense when he shot Willett.

At Bradley's initial sentencing, the district court sustained the objection in part, cross-referencing to voluntary manslaughter rather than to second-degree murder. The district court was presented with two[2] main sources of evidence to

---

[1]The Honorable Beth Phillips, Chief Judge, United States District Court for the Western District of Missouri.

[2]The district court was also presented with the testimony from Bradley's sentencing hearing of Sonja Patton, a woman who had spoken with Bradley earlier

determine whether to apply the cross-reference: (1) the trial testimony of Dena Bunger, a witness to the shooting, and (2) the offense conduct listed in the PSR,[3] which included statements from Bunger, Bradley, and others.

Bunger's testimony generally supported the Government's position that Bradley did not act in self-defense. Bunger testified that she and Bradley were both staying in a house owned by her friend Charles Nichols. Nichols would sometimes rent out space in the house to homeless people and felons on a per-night basis. A few days before Willett was shot, Bradley pulled out a gun in front of multiple people in the house. A few days later, Bunger and others started looking for the gun to have it removed because, as felons, they were not permitted to possess firearms. When she heard Willett say that Bradley had the gun on him, she went over to Bradley and shoved him to the ground. Bradley then stood up, pulled the gun out of his hoodie pocket, and shot Willett, who was just a few feet away. Then Bradley ran out the door, gun still in hand. During her examinations, Bunger admitted to multiple prior felony convictions and noted that she had been on probation at the time of the shooting. She also acknowledged that her probation conditions prohibited her from associating with anybody committing a felony or being involved in any kind of drug activity.

---

the day of the shooting and who testified about Bradley's motive to kill Willett. Because Patton did not testify again at the second sentencing and because the district court did not incorporate that testimony into the second hearing, it is not relevant here.

[3]Bradley initially objected generally to the offense conduct listed in the PSR and specifically denied threatening Willett. However, at sentencing Bradley's attorney stated, "if we're looking at all the facts in the PS[R], . . . apparently none of them have been objected to by either party, so I think they're all pretty much fair game." The district court then later stated "there is conflicting evidence in the PSR that, as [Bradley's attorney] points out, no one has objected to." Given Bradley's statement at the sentencing hearing and the district court's treatment of the PSR, the PSR is treated as unobjected to here.

-3-

The PSR contained conflicting evidence.[4] Bunger told police that "Willett was not armed and had nothing in his hands when Bradley shot him."[5] But the other witness to the shooting, Nichols, said that he "saw Bradley with his hands in his pockets, but never with a firearm," and that he "saw Willett with an axe or a bat, which he swung at Bradley." Nichols also said he then heard a popping noise, and Bradley ran from the residence. He agreed that Bradley and Willett had gotten into an argument about the gun prior to the shooting. The other two witnesses referenced in the PSR spoke to Bradley's behavior earlier that day. One told police that she had seen Bradley the day of the shooting and that he had told her he was "tired of [Willett's] shit" and was "going to teach [Willett] a lesson." The final witness said that she had seen Bradley with the gun earlier on the day of the shooting, that she had heard an argument break out between Bradley and Willett the night of the shooting, and that Willett and Bradley had been friends prior to the shooting.

The PSR also contained a summary of Bradley's statement to the police. Bradley said he found the gun while he was staying at Nichols's home. He stated the gun belonged to Willett, but he declined to return it to Willett "after being sold . . . fake heroin" by Willett's girlfriend. The day of the shooting, he said, he was called out of his room and confronted by Nichols and others about the gun. The PSR specifically recounted:

> Bradley said he was sitting on the couch and Willett was hovering over him and stated, "Why do I feel like I'm about to get shot?" Bradley said he stood up and one of the witnesses shoved him causing him to fall to the floor. He said Willett went to the kitchen and returned with a hatchet and he fired one shot at Willett from where he fell on the floor, striking him in the chest or arm. Bradley said Willett dropped the hatchet and he [Bradley] fled the residence with the hatchet and the

---

[4]The witnesses in the PSR were not identified by name, but the parties agree they are identifiable by context.

[5]Bunger's testimony at trial was consistent with this statement, but she did not specifically say this at trial.

firearm. He then described running into a wooded area, hiding in a trailer, and the police finding him . . . .

Bradley's phone showed text messages between Bradley and Willett during the days prior to the shooting, in which Willett threatened to "kick [Bradley's] ass."

The district court rejected Bradley's self-defense claim. The court considered "the testimony . . . heard at trial, the statement that Mr. Bradley made to the police immediately following this incident, and the actions of Mr. Bradley," including "the fact that he ran, that he definitely hid the gun and took the axe with him and potentially hid the axe." But the court further determined Bradley's conduct did not "rise[] to the level of malice aforethought," and thus cross-referenced to the Guidelines for voluntary manslaughter rather than for second-degree murder. After applying the cross-reference and determining that the Guidelines range was 108 to 135 months' imprisonment, the district court sentenced Bradley to 120 months' imprisonment.

Bradley appealed the sentence on two grounds. He first claimed the district court erred in applying the cross-reference. He noted that at the sentencing hearing, the Government had repeatedly and erroneously credited Bunger with testifying at trial that Willett had nothing in his hands when he was shot. That was not precisely correct, Bradley noted; instead, Bunger had told *police* that she did not see anything in Willett's hands when he was shot. Bradley further contended that Counts 2 and 3—stealing a firearm and possessing a stolen firearm—were multiplicitous in violation of the Double Jeopardy Clause and should have been merged.

The Government successfully moved to vacate and remand. The Government agreed that it had erroneously described Bunger's trial testimony and urged this Court to remand "so that the Government may correct its mistake and the district court may determine in the first instance whether the Government can prove that Bradley did not act in self-defense." The Government further agreed that Counts 2

and 3 were multiplicitous and recommended that the case be remanded so that the district court could vacate one of the convictions. This Court granted the motion.

On remand, the district court dismissed Count 3, heard arguments from both parties about the cross-reference, and, after considering the trial transcript, PSR, and arguments made at the original sentencing, determined the voluntary manslaughter cross-reference was still appropriate. Though the district court determined the same Guidelines range (108-135 months) applied as at the first sentencing, the district court imposed a slightly lower sentence of 108 months' imprisonment on Counts 1 and 2 and 60 months' imprisonment on Count 4, to run concurrently for a total of 108 months' imprisonment.

Bradley appeals. He argues the district court erred in applying the cross-reference to USSG § 2A1.3 both because the cross-reference was based on "clearly erroneous findings of fact" and because the Government failed to "prove by a preponderance of the evidence that Bradley did not act in lawful self-defense when he shot and killed Willet[t]." Appellant Br. 2.

II.

Felon-in-possession sentencing cross-references are governed by USSG § 2K2.1(c), which "directs that '[i]f the defendant used or possessed any firearm or ammunition in connection with the commission . . . of another offense' and death resulted, the district court is to apply 'the most analogous offense guideline' from [§] 2A1." United States v. Tunley, 664 F.3d 1260, 1262 (8th Cir. 2012) (first and second alterations in original) (citing § 2K2.1(c)(1)(B)). Voluntary manslaughter is "the unlawful killing of a human being without malice" and "[u]pon a sudden quarrel or heat of passion." 18 U.S.C. § 1112(a). A killing that is committed in self-defense is not unlawful. See Tunley, 664 F.3d at 1262 n.3 ("Self-defense as a justification for killing is . . . a 'basic right . . . .'" (citation omitted)).

We review for clear error a district court's factual analysis pursuant to the cross-reference of USSG § 2K2.1(c)(1)(B). See id., at 1262. "In the absence of a conviction for another felony offense, the [G]overnment must prove by a preponderance of the evidence all of the essential elements of the underlying felony offense, including the absence of any defenses." Id. (citation omitted). The district court "may consider any relevant information . . . 'provided that the information has sufficient indicia of reliability to support its probable accuracy.'" United States v. Clark, 999 F.3d 1095, 1097 (8th Cir. 2021) (per curiam) (citation omitted). Under clear error review, we reverse "only when the entire record definitely and firmly illustrates that the lower court made a mistake." Id. (citation omitted). "We may reject the fact finder's choice between conflicting evidence only where there is something wrong with the choice,"—and that standard is heightened even further when the findings are based on credibility determinations. United States v. Tucker, 243 F.3d 499, 506 (8th Cir. 2001). "[W]hen a trial judge's finding is based on his decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted . . . , that finding, if not internally inconsistent, can virtually never be clear error." Id. (alteration in original) (quoting Anderson v. City of Bessemer City, 470 U.S. 564, 575 (1985)).

Bradley claims the district court made several clear errors in rejecting his self-defense argument. He first argues the district court erroneously credited Bunger's testimony by improperly ignoring that she had violated her conditions of probation by associating with other felons in Nichols's house and by discounting her three prior felony convictions. Second, he disputes that Bradley's flight from the home permitted an inference of consciousness of guilt. Third, he faults the district court for finding Nichols's account of the shooting to be internally inconsistent. Finally, he argues the district court erred in weighing the conflicting accounts of the shooting by Bunger, Nichols, and Bradley.

After reviewing the record, we find no clear error in the district court's factual findings. The district court considered Bunger's testimony and found her "statements to be credible." That credibility determination is "virtually

unreviewable on appeal." Tunley, 664 F.3d at 1262 (citation omitted). Moreover, the district court provided an explanation for why it believed the testimony of Bunger over that of Nichols and Bradley. The district court acknowledged Bunger's prior convictions but noted they had occurred several years before the shooting. Similarly, the court determined that "[i]t's not clear . . . that she was violating the terms of her probation by being in that location" because the precise conditions of her probation were not in the record. And even if the terms of her probation did prohibit Bunger from staying in that house due to the presence of other felons and a gun, the district court noted that "she was trying to get that gun out of the house," and "this was a house where the owner permitted people who were homeless to live in, which isn't necessarily indicative of any type of illegal activity going on in the home." As to Nichols's testimony, the district court stated "[i]t's a little unclear to me how [Nichols] could see Willet[t] swing an axe or bat and hear a popping noise but not see the gun. So I have some concerns regarding [his] credibility." The district court's finding that Bunger was more credible than Nichols and Bradley is "entitled to special deference." See Clark, 999 F.3d at 1098 (citation omitted) (noting that a district court's credibility determination is "entitled to special deference"). The district court also found Bradley's statements and behavior to be indicative of guilt, noting that Bradley said "don't make me do this" before shooting Willett, that he ran out after the shooting, and that witnesses testified Bradley was angry with Willett prior to the shooting. See Anderson, 470 U.S. at 574 (noting that district courts are entitled to deference even when their "findings do not rest on credibility determinations, but are based instead on . . . inferences from other facts."). Because the record here does not "definitely and firmly illustrate[] that the lower court made a mistake," we affirm the district court's application of the voluntary manslaughter cross-reference. See Clark, 999 F.3d at 1097 (citation omitted).

## III.

We thus affirm the judgment of the district court.

_____

-8-