# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 24-2604

———————————————

United States of America

*Plaintiff - Appellee*

v.

Keonne D. Chaplin

*Defendant - Appellant*

——————————

Appeal from United States District Court
for the Eastern District of Missouri - Cape Girardeau

——————————

Submitted: November 17, 2025
Filed: March 2, 2026
[Unpublished]

——————————

Before COLLOTON, Chief Judge, SHEPHERD and ERICKSON, Circuit Judges.

——————————

PER CURIAM.

Defendant Keonne Chaplin pled guilty to being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). At sentencing, Chaplin acknowledged he had shot his firearm at another person but argued that an upward departure or

variance was not justified because he had acted in self-defense. The district court[1] rejected this argument and granted an upward departure under United States Sentencing Guidelines (USSG) § 5K2.6[2] and an upward variance under 18 U.S.C. § 3553(a), sentencing him to 108 months' imprisonment. Chaplin now appeals his sentence, arguing that the district court committed procedural error by rejecting his self-defense argument. Having jurisdiction under 28 U.S.C. § 1291, we affirm the sentence.

I.

On November 30, 2023, Chaplin engaged in a shootout with Jamison Taylor outside a convenience store in Kennett, Missouri. Chaplin had been released from state prison less than a month prior, and he had a rocky history with Taylor since they had been in a physical altercation a few months earlier while they were both incarcerated. On the day of the incident, Chaplin entered the convenience store and saw Taylor there; he then ran back outside to his car to retrieve his firearm—a Glock 22 pistol with a 30-round magazine. Chaplin then reentered the store while holding the pistol underneath his waistband, and he and his associate, Herman Pounds, stood behind Taylor as he purchased items at the counter. While Taylor exchanged words with Chaplin and Pounds, Chaplin made gestures suggesting he had a gun. Taylor appeared tense and nervous, and he quickly exited the store.

After Taylor left the store, he walked to his car in the parking lot. He then walked back to the front of the store and looked inside the window before returning to his vehicle. Taylor and a passenger from his car then stood near the car, looking towards the store entrance. Meanwhile, Chaplin and Pounds looked out towards the parking lot from inside the store. Pounds then walked outside, while Chaplin stayed

---

[1]The Honorable Stephen R. Clark, Chief Judge, United States District Court for the Eastern District of Missouri.

[2]While § 5K2.6 has been deleted from the Guidelines as of November 2025, Chaplin was sentenced under the November 2023 version of the Guidelines.

near the entrance. Shortly after, Chaplin gripped his gun, walked up to the door, opened it, and fired at Taylor and his passenger. Taylor and his passenger ducked, then returned fire. Chaplin then ran to his car in the parking lot, all the while exchanging gunfire with Taylor. Chaplin jumped into his car and Pounds drove them away. A female passenger in Chaplin's vehicle was injured when a bullet fragment struck the back of her head.

A federal grand jury charged Chaplin with one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Chaplin pled guilty to this count pursuant to a written plea agreement. The parties did not reach any agreement with respect to the Guidelines other than an understanding that Chaplin should receive a reduction in offense level for acceptance of responsibility under USSG § 3E1.1.

Prior to sentencing, the United States Probation Office prepared a Presentence Investigation Report (PSR) that calculated an advisory Guidelines range of 41 to 51 months' imprisonment. The PSR also noted that an upward departure may be justified under USSG § 5K2.6, which provides that "[t]he discharge of a firearm might warrant a substantial sentence increase." The Government filed a sentencing memorandum advocating for an upward departure or variance, recommending a sentence of 120 months. Chaplin filed his own sentencing memorandum, arguing that because he was acting in self-defense when he fired his weapon, an upward departure or variance was not warranted.

At sentencing, the district court rejected Chaplin's self-defense argument. The district court noted that Chaplin shot at Taylor first while Taylor had not drawn a weapon. It also noted that while Taylor and his passenger assumed an "aggressive posture" as they stood outside the store, they only did so after Chaplin ran to his car to retrieve his gun and held it in a threatening manner while standing behind Taylor. Accordingly, the district court granted the Government's requests for an upward departure under USSG § 5K2.6 for the discharge of the firearm and an upward variance under 18 U.S.C. § 3553(a), imposing a sentence of 108 months.

## II.

Chaplin's sole argument on appeal is that the district court committed a significant procedural error by not crediting his self-defense argument when determining his sentence. "A significant procedural error can occur if the district court . . . selects a sentence based on clearly erroneous facts[.]" United States v. Hairy Chin, 850 F.3d 398, 402 (8th Cir. 2017). "We review factual findings at sentencing for clear error under the preponderance-of-the-evidence standard." United States v. Fleming, 103 F.4th 509, 514 (8th Cir. 2024), cert. denied, 145 S. Ct. 1211 (2025). "We reverse for clear error 'only when the entire record definitely and firmly illustrates that the lower court made a mistake.'" United States v. Clark, 999 F.3d 1095, 1097 (8th Cir. 2021) (citation omitted). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." FTC v. Lundbeck, Inc., 650 F.3d 1236, 1239 (8th Cir. 2011) (citation omitted).

Under Missouri self-defense law, a person may use physical force "to defend himself or herself . . . from what he or she reasonably believes to be the use or imminent use of unlawful force by [another] person." Mo. Rev. Stat. § 563.031.1 (2016). However, this force is not excused if the person was the "initial aggressor," unless they previously withdrew from the encounter or had some other justification. See id. § 563.031.1(1).

Here, the district court did not clearly err in finding that Chaplin did not act in self-defense. The undisputed facts establish that Chaplin entered the convenience store moments after Taylor did; that Chaplin, after seeing Taylor, immediately ran to his car and retrieved his gun; that Chaplin then walked back into the store and gripped his gun while standing right behind Taylor; and that Taylor appeared tense and nervous. In his written objection to the PSR, Chaplin conceded that he displayed his gun in an objectively threatening manner in violation of Missouri law. See Mo. Rev. Stat. § 571.030.1(4) (2023) (making it illegal to "[e]xhibit[], in the presence of one or more persons, any weapon readily capable of lethal use in an angry or

-4-

threatening manner"). Based on these facts, it was not clear error for the district court to find that Chaplin was not merely "defend[ing] himself . . . [from] unlawful force" under Missouri law. See Mo. Rev. Stat. § 563.031.1.

Chaplin argues that he could not have initiated the violence because even though he held a gun while standing behind Taylor, Taylor himself was not aware of this. But Chaplin conceded in his objection to the PSR that he displayed his weapon in an objectively threatening manner, that he had a violent history with Taylor, and that Taylor seemed nervous while Chaplin was standing behind him. Furthermore, the video footage shows Chaplin conspicuously gripping an object in his waistband while in the store and Taylor facing Chaplin and talking to him when he walks out. Cf. United States v. Cotton, 782 F.3d 392, 396 (8th Cir. 2015) (noting that a person who reaches for his waistband can create the reasonable suspicion that he is armed). Given these facts, it was not clearly erroneous for the district court to find that Taylor knew that Chaplin was armed in a threatening manner and that it was therefore Chaplin who was the initial aggressor under Missouri law. See Mo. Rev. Stat. § 563.031.1(1).

In any case, even if Taylor did not initially know that Chaplin was armed, Chaplin still concedes that he shot at Taylor while Taylor was standing outside the store without a weapon drawn. Thus, since the record does not "definitely and firmly illustrate" that Chaplin was acting in self-defense, see Clark, 999 F.3d at 1097 (citation omitted), the district court did not clearly err by rejecting this argument when determining his sentence.

III.

For the foregoing reasons, we affirm the judgment of the district court. We grant the Government's motion to supplement the record.

_____

-5-